[No. A065957. Fist Dist., Div. Two. Aug. 10, 1995.]

FRANK CISNEROS, Plaintiff and Respondent, v.
JAY L. VUEVE et al., Defendants and Appellants.

**COUNSEL**

Bronson, Bronson & McKinnon, Robert N. Phillips and Paul R. Mohun for Defendants and Appellants.

Rifkind & Fuerch, Stephen M. Fuerch and Edward McCutchan for Plaintiff and Respondent.

**OPINION**

**SMITH, J.**—Under recent amendments to Code of Civil Procedure section 473 (section 473), upon a timely filed motion for relief a trial court *must* vacate a default or resulting default judgment upon the sworn affidavit of the defaulting party's attorney attesting to his mistake, inadvertence, surprise or neglect "unless the court finds that the default . . . was not in fact caused by the attorney's mistake, inadvertence, surprise or neglect." In this case, we hold that this provision does not afford relief to a client who, after inexcusably allowing his default to be entered, hires an attorney whose neglect results in a default judgment.

### BACKGROUND

In April 1993 (further unspecified calendar references are to that year), plaintiff Frank Cisneros filed a complaint against defendants-appellants Jay L. Vueve, individually and doing business as Financial Realty Services, and Bill Hector, claiming that defendant real estate brokers committed fraud and breach of fiduciary duty in inducing him to buy a motel in the Lake Tahoe area. Summons, complaint and a statement of damages were duly served on defendants on April 15 and 16. A set of interrogatories was mailed to them on May 7.

When no response was forthcoming, plaintiff mailed a request for entry of default on June 3; the clerk entered defendants' default on June 4. Upon learning of the default, defendants contacted their insurance carrier. On July 26, plaintiff appeared for a "prove-up" hearing and submitted evidence in support of entry of a default judgment. In August, defendants' insurance carrier retained Attorney Paul Perdue to represent them in the action. After starting work on a motion to set aside the default, Perdue became involved in other matters and completely forgot about the file.

On September 2, the court entered default judgment in favor of plaintiff in the amount of $598,049. Defendants' insurance adjuster called Perdue in February 1994 to inquire about the status of the case, alerting him to the fact that he had done nothing about the file since August. On March 3, 1994, 182 days after entry of judgment and well in excess of 6 months after clerk's entry of default, Perdue brought a section 473 motion on defendants' behalf to set aside the default and the judgment. In support of the motion, Perdue

filed an affidavit confessing his responsibility for the lengthy period of inaction in the case.[1]

The argument at the hearing focused on whether Perdue's affidavit of neglect required the trial court to set aside both the default and the judgment under the recent "attorney affidavit" amendments to section 473. After assuming that the motion was brought within the six-month jurisdictional time frame required by that section, the trial court was nevertheless clearly troubled by the fact that the underlying default was not caused by the attorney because it was entered in June, prior to the time Perdue was retained to represent defendants. The court denied the motion by minute order and this appeal ensued.

## APPEAL

At the outset, it is important to note that we are not concerned with the "traditional" discretionary relief provisions of section 473 which allow the trial court to set aside a default caused by a party's "mistake, inadvertence, surprise, or *excusable* neglect." (Italics added.) Defendants' position is that the trial court had a duty to set aside both default and default judgment under the recent mandatory provision of section 473, which states: "Notwithstanding any other requirements of this section, the court *shall*, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, *unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect.*" (Italics added; see *Sugasawara* v. *Newland* (1994) 27 Cal.App.4th 294, 297 [32 Cal.Rptr.2d 484].)

We assume that the application was timely and that Attorney Perdue's affidavit was sufficient to establish attorney neglect within the meaning of this section. Under the recent mandatory relief provision of section 473 relief must be granted regardless of whether the attorney's neglect is excusable. (*Metropolitan Service Corp.* v. *Casa De Palms, Ltd.* (1995) 31 Cal.App.4th

---

[1]Defendants also filed personal affidavits alleging in essence that the default occurred because no one in their office distributed their mail and that it accumulated without review. However, no claim is made herein that these affidavits warranted setting aside the judgment below. We therefore do not discuss them further.

1481, 1487 [37 Cal.Rptr.2d 575].) Accordingly, relief was mandatory absent application of the "unless" clause italicized above.[2]

Expressly by its comments and impliedly by its order, the trial court found that the "unless" clause applied because the *default* was not caused by any act or omission on the part of defendants' attorney. The logic cannot be questioned, since it is undisputed that Perdue was not hired until after defendants' default was taken.

Defendants suggest that the word "default" in the clause is unclear. They take the position that the section 473 relief is required where the default *judgment* is caused by attorney neglect even if the attorney had nothing to do with the underlying default. They reason that the Legislature intended the "unless" clause only to enable the court to test the credibility of the attorney's affidavit, and that mandatory relief for an attorney-caused default judgment is consistent with the remedial spirit of the statute. This argument runs contrary to common sense as well as settled rules of statutory interpretation.

Our first task is to determine if there is an ambiguity in the "unless" clause. ■ Where the language of a statute is clear and unambiguous, there is no need to resort to statutory construction. (*Billings* v. *Health Plan of America* (1990) 225 Cal.App.3d 250, 256 [275 Cal.Rptr. 80].) " 'It is a cardinal rule that a court is not justified in ignoring the plain words of a statute unless it clearly appears that the language used is contrary to what, beyond question, was the intent of the Legislature [citation].' " (*Lamberton* v. *Rhodes-Jamieson* (1988) 199 Cal.App.3d 748, 754 [245 Cal.Rptr. 162], quoting *Breshears* v. *Indiana Lumbermens Mut. Ins. Co.* (1967) 256 Cal.App.2d 245, 250 [63 Cal.Rptr. 879].)

■ We discern no uncertainty or vagueness in the clause, which carves out an exception for relief where the "default" was not caused by attorney misfeasance. "[T]he 'default and default judgment are separate procedures.' " (*Rutan* v. *Summit Sports, Inc.* (1985) 173 Cal.App.3d 965, 970 [219 Cal.Rptr. 381].) The Legislature's specific and careful use of both "default" and "default judgment" elsewhere in the statute shows that it understood the two terms and the material distinction between them. Yet while the amendment authorizes *relief* from both default and default judgment, the statute is

---

[2]We reject plaintiff's contention that the court had no jurisdiction to set aside the default (as opposed to the default judgment) because more than six months had passed from the entry of default and the motion for relief. The legislative history of the 1991 amendment makes clear that when a default judgment is vacated pursuant to this section, the trial court is also required to set aside the underlying default. (*Sugasawara* v. *Newland, supra,* 27 Cal.App.4th 294, 297.)

equally clear that for mandatory relief to apply the court must also satisfy itself that the *default* (i.e., the failure to respond) was in fact caused by attorney mistake or neglect.

Defendants' argument suffers from an insuperable linguistic hurdle, in any event, because if "default" does not mean the clerk's entry of default, what does it mean? While suggesting ambiguity in the word, defendants never tell us exactly what meaning we should ascribe to it. In their reply brief, defendants suggest that the Legislature was using the word "default" loosely and generically to refer to either the default or the default judgment. But even if we take the leap of faith in construing the term to mean "default *or* default judgment" defendants still wind up on the losing end of this appeal, because the court could deny relief if either event were not caused by counsel. Defendants do not venture the implausible proposition that when the Legislature said "default" it actually meant "default *and* default judgment," yet that is exactly what we must hold to accept their argument. Defendants' failure to confront the logical import of their position illustrates its obvious weakness.

Nothing in the legislative history of the 1988 and 1991 amendments cited by defendants indicates that the Legislature intended mandatory relief for neglectful clients who allow their default to be entered simply because that neglect is compounded by attorney neglect in permitting the judgment to be perfected.

In support of their "remedial spirit" argument, defendants rely on a Senate Rules Committee analysis of the bill stating that " '[i]n an effort to balance the equities the bill seeks to provide the court a mechanism for properly burdening *the party whose inaction resulted in the default* with the expense of compensating both the court and opposing counsel for any reasonable expenses incurred.' " (Sen. Rules Com., Analysis of Sen. Bill No. 1975 (1987-1988 Reg. Sess.) as amended Aug. 9, 1988.) They also quote from a letter to the Governor from the author of the bill stating that "Clients *who have done nothing wrong* are often denied the opportunity to defend themselves, simply because of the mistake or inadvertence of their attorneys *in meeting filing deadlines*." (Italics added.)[3]

Far from supporting defendants' argument, the legislative history undercuts it. As illustrated by the italicized language, the policy goal sought to be

---

[3]Letter dated September 14, 1988, from Senator Ed Davis to Governor George Deukmejian re: Senate Bill No. 1975.

effectuated is to relieve *innocent* clients from losing their day in court because the attorneys they hired to defend them inexcusably fail to file responsive papers. Nothing in the letter or any of the other legislative materials brought to our attention indicates that the Legislature intended to relieve parties who carelessly permit the default to be entered when they subsequently hire equally neglectful attorneys whose failure to take action allows the default to ripen into a judgment. On the contrary, the "unless" clause appears directly calculated to deny relief to parties, like defendants, who bear personal responsibility for allowing the default to occur in the first place.

Nor are we persuaded that the "unless" clause of section 473 was intended solely as a test of the credibility of the attorney's affidavit. According to this argument, as long as the court believes that the attorney is not trying to "cover-up" for the client, the court must set aside a default judgment upon timely application.

A close look at the language reveals that the "unless" clause is not a credibility testing device, it is a causation testing device. The statute mandates relief "unless the court finds that the default . . . was not *in fact caused* by the attorney's mistake, inadvertence" etc. (Italics added.) While attorney cover-up is obviously one instance in which the default would not truly be caused by the attorney, there are others like the one at bar in which a neglectful client permits the default to be taken against him before retained counsel enters the scene.[4]

Because Attorney Perdue was not representing defendants at the time the default was entered, we find as a matter of law, that he was not the proximate cause of the entry of default as defined in the "unless clause." Hence, the trial court properly concluded that defendants were not entitled to relief under the attorney affidavit provisions of section 473.

---

[4]Neither the respected treatise cited by defendants (Brown & Weil, Cal. Practice Guide: Civil Procedure Before (The Rutter Group 1995) § 5:292, p. 5-58 rev. #1, 1995) nor the case it cites (*Rogalski* v. *Nabers Cadillac* (1992) 11 Cal.App.4th 816, 821 [14 Cal.Rptr.2d 286]) supports the proposition that "attorney cover-up" is the only basis for denying mandatory relief under section 473. On the contrary both authorities clearly state that it is but one *example* in which the causation test would not be satisfied. (*Ibid.*, citing *Rogalski*, *supra*, at p. 821, fn. 5 [attorney stated defaults "were the result of surprise and neglect" but was not representing clients at the time defaults were obtained].)

## DISPOSITION

The order denying the section 473 motion is affirmed.

Kline, P. J., and Phelan, J., concurred.

Appellants' petition for review by the Supreme Court was denied November 2, 1995.