Opinion
 

 GODOY PEREZ, J.
 

 Perceptual Development Corporation, Robert Men and Helen Men appeal from orders vacating the dismissal of the complaint against them and vacating the defaults and default judgments entered against the various parties named as cross-defendants to their responsive cross-complaint. For the reasons set forth below, we affirm those orders.
 

 
 *864
 
 Facts and Procedural History
 
 [1]
 

 Respondent Dr. Robert E. Milton (Milton) sued appellants Perceptual Development Corporation (PDC), Robert Men and Helen Men in a complaint filed October 26, 1992, alleging fraud and securities law violations in connection with a joint business venture for the use of certain optometric techniques.
 
 [2]
 
 In April 1993, appellants cross-complained against Milton and respondents Spectro-Optics Corporation (SOC) and Brad Lee Brent-Chase (Brent-Chase), alleging breach of contract, fraud, trade secrets violations and other causes of action arising out of the same joint business venture.
 
 [3]
 

 When Milton filed his complaint, he was represented by Attorney Randy M. Hess of the firm Adelson, Hess, Christensen & Kelly. On March 24, 1993, Hess was substituted out in favor of lawyer Stephen L. Hurst, vice-president, secretary and corporate counsel for SOC. On July 15, 1993, Hurst officially associated in as cocounsel Joseph Hartley of Hartley & Hartley. Hurst and Hartley divided responsibility for the case so that Hurst handled issues involving intellectual property law while Hartley handled all procedural and discovery matters. On July 5, 1994, Hurst resigned from SOC but did not officially withdraw as attorney of record.
 

 Beginning in August 1993, Hartley failed to respond to appellants’ various discovery requests to Milton and failed to respond to or appear at appellants’ concomitant motions to compel further responses. A motion to compel was granted on September 7, 1993. When Hartley did not comply, another motion was granted and sanctions ordered at a hearing held November 4, 1993. When no further responses were made, another hearing was held on January 6, 1994, with the court dismissing Milton’s complaint. On February 8, 1994, the court struck Milton’s answer to appellants’ cross-complaint based on his failure to provide discovery responses. On February 16, 1994, the court entered Milton’s default on appellants’ cross-complaint. Hartley brought a section 473 motion in August 1994 seeking to vacate Milton’s default based on Hartley’s affidavit of fault. That motion was denied.
 

 
 *865
 
 Hartley followed the same pattern in response to discovery requests and motions to compel aimed at Brent-Chase and SOC. On March 29, 1994, the court granted appellants’ motion to compel discovery responses from Brent-Chase and SOC and imposed sanctions of $689. When no responses were made, appellants brought another motion to compel, which was granted on July 21, 1994. No sanctions were imposed but responses were due by August 10, 1994. When that did not occur, appellants brought another motion to compel. That motion, along with sanctions of $764, was granted on September 27, 1994. Hartley contends he did not receive a notice of this ruling. When there was no compliance with this order, another motion to compel, along with sanctions of $2,064, was granted on November 17,1994. Another motion to compel was granted on January 31, 1995, and the answers of Brent-Chase and SOC were stricken. Their defaults were ordered entered on February 27, 1995. Following prove-up hearings on June 19, 1995, a default judgment of more than $2.7 million was entered against respondents on appellants’ cross-complaint.
 

 Milton wrote to his insurer in January 1995, stating that he was unhappy with Hartley’s performance and wished to substitute in as new counsel the law firm of Murchison & Gumming. The insurer agreed and assigned the matter to that firm on February 10, 1995. In March 1995 Milton learned for the first time that his complaint had been dismissed and his default taken on appellants’ cross-complaint when told this by lawyer Steven Smilay of Murchison & Gumming. Between March 31 and August 16, 1995, Smilay sent an increasingly strident series of letters to Hartley demanding that he substitute out of the action and turn over Milton’s case files. Hartley did not comply until sometime after the August letter, which threatened the initiation of a State Bar disciplinary action. On September 26, 1995, Hartley signed a substitution of attorney form in favor of Murchison & Gumming.
 

 Brent-Chase first learned of the default judgment when he received notice of its entry on September 7, 1995. He hired another lawyer to investigate, who was unable to obtain a copy of Hartley’s files until September 21, 1995.
 

 On October 16, 1995, Milton filed a motion seeking to vacate the default judgment under section 473, based on Hartley’s misconduct. Brent-Chase and SOC filed a similar motion on October 18, 1995. Hartley submitted an affidavit of fault in support of both motions, stating that Milton, Brent-Chase and SOC had willingly helped prepare discovery responses when appellants’ discovery requests were first propounded, that he (Hartley) became so overwhelmed and depressed by a legal malpractice action he was defending for another client that he forgot to mail those responses, did not oppose the various motions to compel, did not attend the hearings on those motions, and
 
 *866
 
 did not inform his clients of what was taking place. Hurst submitted a declaration stating that Hartley continually assured him he was handling things and that Hurst was unaware of the problems until well after they occurred. In a supplemental declaration, Hurst clarified that he did not learn about the default judgments until September 1995. Hurst opined that he was not guilty of mistake, inadvertence, surprise or neglect, but if he were, it was not the fault of Milton, Brent-Chase or SOC, who cooperated fully in providing information when asked to do so.
 
 [4]
 
 Those motions were granted at a November 2,1995, hearing and formal orders to that effect were signed on November 6, 1995.
 

 On October 30, 1995, Milton filed a motion seeking to vacate the dismissal of his complaint against appellants on equitable grounds under section 473, contending that he was virtually unrepresented during the time Hartley was his attorney and allowed the dismissal to occur. The court granted the motion on that basis on December 28, 1995.
 

 On December 29, 1995, appellants brought a petition for writ of mandate seeking to reverse those orders. We denied that petition on March 1, 1996, on the ground that the orders were appealable.
 
 (Perceptual Development Corp.
 
 v.
 
 Superior Court
 
 (Mar. 1. 1996) B098346 [nonpub. opn.].) This appeal followed.
 

 Discussion
 

 1.
 
 Orders Vacating the Default Judgments
 

 Section 473, subdivision (b) provides in general terms that a judgment, dismissal, order or other proceeding may be set aside if obtained due to mistake, inadvertence, surprise or excusable neglect. That section also requires that a default, default judgment or dismissal be set aside if they were the result of attorney error: “Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney’s sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney’s mistake, inadvertence, surprise, or neglect. The
 
 *867
 
 court shall, whenever relief is granted based on an attorney’s affidavit of fault, direct the attorney to pay reasonable compensatory legal fees and costs to opposing counsel or parties. . . .”
 

 Appellants contend that Hartley’s affidavit of fault was insufficient given that respondents were represented by other lawyers, particularly Hurst, who also bear some of the blame. In essence, appellants appear to contend that Hartley’s conduct, by itself, did not cause entry of the defaults and default judgments on their cross-complaint.
 

 The clause in section 473, subdivision (b) which mandates the court to grant relief unless it finds that the default was not in fact caused by lawyer error is not only a credibility testing device. It is also “a causation testing device.”
 
 (Cisneros
 
 v.
 
 Vueve
 
 (1995) 37 Cal.App.4th 906, 912 [44 Cal.Rptr.2d 682].) The
 
 Cisneros
 
 court affirmed a trial court order denying section 473 relief because the lawyer was not representing the clients when their defaults were entered and therefore was not the proximate cause of their entry. (37 Cal.App.4th 912.) A trial court’s finding on the causation issue will be affirmed so long as it is supported by substantial evidence.
 
 (Johnson
 
 v.
 
 Pratt & Whitney Canada, Inc., supra,
 
 28 Cal.App.4th at pp. 622-623.) If the evidence gives rise to conflicting inferences, one of which supports the trial court’s findings, we must affirm.
 
 (Ibid.)
 

 In legal malpractice actions, a lawyer’s negligence need not be the only proximate cause of a client’s injury so long as there is causation in fact.
 
 (Cline
 
 v.
 
 Watkins
 
 (1977) 66 Cal.App.3d 174, 178 [135 Cal.Rptr. 838].) We see no reason why the definition of “proximate cause” should differ in the two contexts and therefore apply the same rule when determining questions of proximate cause under section 473, subdivision (b).
 
 [5]
 

 Ample substantial evidence supports the trial court’s finding that Hartley’s admitted misconduct caused entry of both the defaults and default judgments against respondents. The discovery requests and motions to compel which resulted in the defaults and default judgments all occurred while Hartley was attorney of record with the responsibility for all procedural and discovery matters. Hurst, who was not handling those matters, had been assured repeatedly by Hartley that all was well. Even if Hurst should have known of Hartley’s defalcations, Hartley’s omissions still remain as a proximate cause, if not the only one, of the defaults and default judgments. The
 
 *868
 
 same is true for lawyer Smilay of Murchison & Gumming, who stepped into the fray long after the defaults were entered and who was unable to obtain either the case files or Hartley’s consent to a substitution of attorneys until some months after the default judgments were entered. Furthermore, section 473 no longer includes a requirement of diligence and such motions are timely where—as here—they are brought within six months after entry of the default judgment.
 
 (Metropolitan Service Corp.
 
 v.
 
 Casa de Palms, Ltd.
 
 (1995) 31 Cal.App.4th 1481, 1487 [37 Cal.Rptr.2d 575].)
 

 As for respondents themselves, there is also substantial evidence that they were not responsible in whole or in part for the defaults and default judgments. Hartley and Hurst both stated that Milton and Brent-Chase freely cooperated with appellants’ discovery requests when first propounded and brought to respondents’ attention. Brent-Chase’s assertion that he did not learn about the default and concomitant judgment until September 1995 is uncontradicted. Milton did not learn his default had been taken until March 1995, after he became dissatisfied with Hartley’s representation and obtained new legal counsel. As mentioned above, that new counsel tried to obtain the case file from Hartley, who did not turn it over until after the default judgment had been entered. On these facts, the evidence is sufficient to affirm the court’s orders vacating the default judgments against respondents.
 
 [6]
 

 2.
 
 Order Vacating Dismissal of Milton’s Complaint
 

 *
 

 Disposition
 

 For the reasons set forth above, the orders vacating the dismissal of Milton’s complaint and vacating the defaults and default judgments against Milton, Brent-Chase and SOC are affirmed. Respondents to recover their costs on appeal.
 

 Grignon, Acting P. J., and Armstrong, J., concurred.
 

 [1]
 

 This appeal arises primarily from orders vacating default judgments pursuant to Code of Civil Procedure section 473, subdivision (b) and we will affirm the court’s orders if they are supported by substantial evidence.
 
 (Johnson
 
 v.
 
 Pratt & Whitney Canada, Inc.
 
 (1994) 28 Cal.App.4th 613, 622-623 [34 Cal.Rptr.2d 26].) Accordingly, we state the facts in the manner most favorable to respondents, resolving all conflicts and drawing all inferences in their favor.
 
 (Aceves
 
 v.
 
 Regal Pale Brewing Co.
 
 (1979) 24 Cal.3d 502, 507 [156 Cal.Rptr. 41, 595 P.2d 619].) All further statutory references are to the Code of Civil Procedure.
 

 [2]
 

 PDC, Robert Men and Helen Men will be referred to collectively as appellants.
 

 [3]
 

 Also named as cross-defendants were The Center For Perceptual Care and Dwight Barber. It is unclear whether they are still parties to this action but they are not parties to this appeal. Milton, Brent-Chase and SOC will sometimes be referred to collectively as respondents.
 

 [4]
 

 Milton’s insurer, Fireman’s Fund Insurance Company, also moved to vacate the default judgment after being granted leave to intervene in the action. That motion was granted and was also the subject of this appeal until we dismissed the appeal as to Fireman’s Fund Insurance Company only.
 

 [5]
 

 To the extent appellants contend that a client represented by more than one lawyer cannot obtain relief under section 473 unless all counsel submit an affidavit of fault, we reject that contention under the same principle of proximate cause.
 
 (Cline
 
 v.
 
 Watkins, supra,
 
 66 Cal.App.3d at p. 178.)
 

 [6]
 

 Because the trial court vacated the defaults based on the attorney fault provision of section 473, subdivision (b), and because we affirm on that basis, we need not reach appellants’ contention that equitable relief from the defaults was unwarranted.
 

 *
 

 See footnote,
 
 ante,
 
 page 861.