[No. A088723. First Dist., Div. Two. Mar. 9, 2001.]

ANGELA K. BENEDICT, Plaintiff and Appellant, v.
DANNER PRESS et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III. B and C.

COUNSEL

Parker & Crosland, David M. Parker, C. Royda Crosland and David H. Bruns for Plaintiff and Appellant.

Jackson, Lewis, Schnitzler & Krupman, Tyler A. Brown, Patrick C. Mullin; Ross & Hardies, Gail Chaney Kalinich and Stephen B. Mead for Defendants and Appellants.

OPINION

## HAERLE, J.—

### I. INTRODUCTION

Angela K. Benedict appeals the trial court's order granting Danner Press, The Press of Ohio and Bryant Whittaker (respondents) relief from default and default judgment under Code of Civil Procedure section 473, subdivision (b).[1] Respondents filed a protective cross-appeal challenging the propriety of the default and default judgment. We conclude that the trial court properly granted relief from default and default judgment and therefore do not reach the issues raised in the cross-appeal.

### II. STATEMENT OF FACTS

On January 29, 1999,[2] Benedict filed a first amended complaint in propria persona against respondents and D.B. Hess Co. On April 21, Benedict filed requests for entry of default and default judgment as to respondents only. On that same date, the clerk entered default.

On May 6, Benedict substituted the Parker & Crosland firm as her attorneys of record. On June 16, respondents filed a motion to quash service of summons pursuant to section 418.10. In this motion, respondents challenged the sufficiency of service of process. Respondents contended that the only attempt at service of which they were aware was when Whittaker went outside one morning and found a copy of the first amended complaint lying on his porch.

Benedict opposed respondents' motion, arguing that Whittaker, the authorized agent for service of process for the corporate defendants, had been

---

[1]Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

[2]Unless otherwise indicated, all dates throughout this opinion refer to 1999.

properly served. Benedict submitted the declaration of Frank Hawkins, the process server. Hawkins averred that he telephoned Whittaker while he stood outside Whittaker's house and told Whittaker of his intent to serve a complaint. Hawkins claimed that when Whittaker asked him to come back the next day, he told Whittaker "that was not how it was done." Hawkins knocked on the door and then placed on Whittaker's front porch the summons and other pleadings for each of the three respondents. As Hawkins was walking away, Whittaker opened the front door and picked up the documents. Hawkins called to Whittaker, "Mr. Bryant Whittaker, you have been served with legal papers."

In addition to the motion to quash service of summons, respondents also filed a motion to vacate entry of default. In this motion, respondents argued that Benedict's request for entry of default sought default on Benedict's original complaint, for which there was no service, not the first amended complaint, for which service was disputed. Respondents also argued that without valid service, as argued in their other motion, entry of default should be vacated under section 473.5.

On August 6, the trial court denied respondents' motions and, on August 9, it entered judgment against respondents.

On August 24, respondents filed a motion for relief from judgment and to vacate entry of default under section 473, subdivision (b). Respondents' attorneys submitted declarations explaining that they relied on Whittaker's description of the attempted service in erroneously concluding that respondents did not need to respond to the first amended complaint. Respondents' attorneys also explained that, on or about March 30, they obtained a copy of the court file and saw Hawkins's declaration of service. Counsel explained that "[i]n retrospect, immediately upon viewing what I believed to be an untrue Declaration of Service, I should have instructed local counsel to file a Motion to Quash Service, answer, or another sort of responsive pleading." Respondents' counsel received Benedict's request for entry of default in April, but again misjudged the situation when they concluded that the request for entry of default would not be granted because it referred to the original complaint rather than the first amended complaint. Defense counsel did not conclude that a motion to quash should be filed until April 19, but before those documents could be prepared, default was entered.

On September 9, the trial court granted respondents' motion for relief from default. At the hearing on the motion, the trial court expressly declined to find that Whittaker had lied and, instead, concluded that Whittaker was "mistaken," explaining that "individuals [who] are close to transactions perceive things from their own shaded eyes."

On September 30, Benedict filed a notice of appeal. On October 14, respondents filed a protective cross-appeal.

## III. DISCUSSION

### A. *The Trial Court Properly Granted Relief Under Section 473, Subdivision (b)*

■ Section 473, subdivision (b), provides for both discretionary and mandatory relief from dismissal, entry of default, and default judgment. The mandatory provision requires that the court vacate the dismissal or entry of default and default judgment whenever (1) an application is made no more than six months after entry of judgment, (2) the application is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, and (3) the attorney's mistake, inadvertence, surprise or neglect in fact caused the dismissal or entry of default. (§ 473, subd. (b).)

Prior to its amendment in 1988, subdivision (b) of section 473 provided solely for discretionary relief and did not include this provision for mandatory relief. (See Stats. 1981, ch. 122, § 2, pp. 862-863.) In amending the statute to add a mandatory provision (see Stats. 1988, ch. 1131, § 1, p. 3631),[3] the Legislature sought " ' "to relieve the innocent client of the burden of the attorney's fault, to impose the burden on the erring attorney, and to avoid precipitating more litigation in the form of malpractice suits." [Citations.]' [Citation.]" (*Avila v. Chua* (1997) 57 Cal.App.4th 860, 868 [67 Cal.Rptr.2d 373].) As a result, relief under the mandatory provision is available whether or not the attorney's neglect is excusable. (*Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 681 [68 Cal.Rptr.2d 228]; *J.A.T. Entertainment, Inc. v. Reed* (1998) 62 Cal.App.4th 1485, 1492 [73 Cal.Rptr.2d 365] (*J.A.T. Entertainment*).)

Our focus here is on the third component of the test for granting mandatory relief, namely the requirement that the attorney's conduct or inaction in fact cause the dismissal or entry of default. That component has been described as " 'a causation testing device.' " (*Milton v. Perceptual Development Corp.* (1997) 53 Cal.App.4th 861, 867 [62 Cal.Rptr.2d 98] (*Milton*); see also *Yeap v. Leake* (1997) 60 Cal.App.4th 591, 602 [70 Cal.Rptr.2d 680]

---

[3]The 1988 amendment added the following relevant language to section 473, subdivision (b): "Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is timely, in proper form, and accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise or neglect, vacate any resulting default judgment entered against his or her client unless the court finds that the default was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." (Stats. 1988, ch. 1131, § 1, p. 3631.)

(*Yeap*).) We affirm the trial court's finding on the causation issue so long as it is supported by substantial evidence. (*Milton, supra,* 53 Cal.App.4th at p. 867.)

 Here, the trial court concluded that counsel's mistake or neglect caused the entry of default and therefore granted respondents relief from default and default judgment. Benedict challenges the trial court's ruling on two bases. First, she contends that, in respondents' reply to their motions to vacate entry of default and to quash service of complaint, they disclaimed any attorney responsibility for the entry of default. The trial court rejected this contention, explaining that respondents had merely responded to Benedict's "argument that this motion should not have been granted the first time around because it wasn't premised on attorney mistake. But they agreed with you that they never raised the issue of attorney mistake. That wasn't an issue that they made . . . ."

We agree with the trial court that the record does not contain a disclaimer of attorney fault. Respondents' first motions questioned the adequacy of service and did not seek to assess blame. Thus, this case is distinguishable from *Todd v. Thrifty Corp.* (1995) 34 Cal.App.4th 986 [40 Cal.Rptr.2d 727] (*Todd*), cited by Benedict. In that case, the attorney initially attributed the dismissal solely to plaintiff's personal problems and then later sought to accept blame. (*Id.* at pp. 989-990.) The appellate court concluded that, having initially blamed the client, "counsel could not thereafter attempt to change the facts and blame himself." (*Id.* at p. 992.)

Moreover, it would be difficult to accept a full disclaimer of responsibility from respondents' counsel in this case. Prior to the entry of default, respondents' counsel learned that the court file included a declaration of service from a process server, thus setting up a possible credibility dispute between the process server and Whittaker. Even if counsel believed that Whittaker accurately described the attempted service of process, counsel should not have presumed that the court would believe Whittaker's description over that of the process server.

As a second challenge to the trial court's ruling, Benedict contends that relief is not available because Whittaker is not a wholly innocent party. Benedict points out that Whittaker's inaccurate description of service was partially responsible for the attorneys' decision not to answer or otherwise defend the first amended complaint. This raises the issue of whether, if mandatory relief under section 473, subdivision (b), is to be granted, the attorney must be solely responsible for the entry of default.

On its face, section 473, subdivision (b), does not preclude relief under the mandatory provision when default is entered as a result of a combination of

attorney and client fault. The statute merely requires that the attorney's conduct be a cause in fact of the entry of default (see § 473, subd. (b)), but does not indicate that it must be the *only* cause. In *Milton,* the appellate court considered the causation requirement of the mandatory relief provision of section 473, subdivision (b). (*Milton, supra,* 53 Cal.App.4th at p. 867.) The court concluded that the proximate cause standard for legal malpractice actions should also apply to the causation requirement of the mandatory provision of section 473, subdivision (b). (*Milton,* at p. 867.) Under that standard, "a lawyer's negligence need not be the only proximate cause of a client's injury so long as there is causation in fact." (*Ibid.*)

"An act is a cause in fact if it is a necessary antecedent of an event. (Prosser & Keeton on Torts (5th ed.1984) § 41, p. 265.)" (*PPG Industries, Inc. v. Transamerica Ins. Co.* (1999) 20 Cal.4th 310, 315 [84 Cal.Rptr.2d 455, 975 P.2d 652].) Here, the entry of default was not solely caused by respondents or by their counsel, but instead was caused by *both* respondents and their counsel. While Whittaker's misdescription of service of process contributed to the sequence of events that resulted in the entry of default, it was not the sole cause. Respondents' counsel's mistakes and neglect were also partial causes in fact of the entry of default and default judgment.

Moreover, respondents' involvement in the entry of default did not obviate a legal malpractice action but would merely support a partial defense of comparative fault in any such action. (Cf. *Holland v. Thacher* (1988) 199 Cal.App.3d 924, 929 [245 Cal.Rptr. 247].) Thus, granting relief from default in this instance serves the purpose of preventing the necessity of a legal malpractice action.

The few cases where the appellate courts have affirmed the denial of relief under section 473, subdivision (b), even though the attorney's conduct contributed to the entry of default, have all involved circumstances where the client's *intentional* misconduct was found to be responsible, at least in part, for the dismissal or entry of default. For example, in *Johnson v. Pratt & Whitney Canada, Inc.* (1994) 28 Cal.App.4th 613 [34 Cal.Rptr.2d 26] (*Johnson*), a case relied on by Benedict, the trial court found that the client, Pratt & Whitney Canada, Inc. (Pratt), had participated, apparently in conjunction with its counsel, in the deliberate discovery misconduct that precipitated the striking of Pratt's answer. (See *id.* at pp. 622-623.) The appellate court concluded that substantial evidence supported the trial court's finding that Pratt was implicated in the discovery misconduct and therefore the trial court "did not abuse its discretion in denying Pratt relief from sanctions under section 473." (*Id.* at p. 623.)

Similarly, in *Lang v. Hochman* (2000) 77 Cal.App.4th 1225 [92 Cal.Rptr.2d 322] (*Lang*), the trial court imposed terminating sanctions after numerous

violations of discovery orders. (See *id.* at pp. 1239-1240.) The trial court specifically found that the attorneys and the clients " 'willfully, intentionally, violated the discovery laws, the orders of this Court, [and] the recommendations . . .' " of another judge. (*Id.* at p. 1241, italics omitted.) On appeal, the appellate court reasoned that "a party can rely on the mandatory provision of section 473 only if the party is totally innocent of any wrongdoing and the attorney was the *sole* cause of the default or dismissal." (77 Cal.App.4th at p. 1248.) Finding substantial evidence to support the trial court's determination that shared misconduct caused the default judgment, the court affirmed the denial of mandatory relief under section 473, subdivision (b). (77 Cal.App.4th at p. 1252.)

The *Lang* and *Johnson* decisions both involved intentional misconduct by the clients, a genre of conduct not at issue in this case. (See *Lang, supra,* 77 Cal.App.4th at p. 1248; *Johnson, supra,* 28 Cal.App.4th at pp. 622-623.) To the contrary, the trial court here expressly declined to conclude that Whittaker lied, instead concluding that he was mistaken. The record supports this finding and, therefore, we need not and do not confront the issue, addressed in *Lang* and *Johnson,* of whether the presence of intentional misconduct, even when combined with attorney neglect, precludes reliance on the mandatory provision of section 473, subdivision (b).

As already noted, the client conduct which contributed to the default here was, according to the trial court, a "mistake." We find nothing in section 473, subdivision (b) or the policy underlying it to justify precluding relief when that type of client conduct is a contributing cause of a default. Nor, we conclude, should we foreclose relief based on the statement in *Lang* that "a party can rely on the mandatory provision of section 473 only if the party is totally innocent of any wrongdoing and the attorney was the *sole* cause of the default or dismissal." (*Lang, supra,* 77 Cal.App.4th at p. 1248.) For two separate and distinct reasons, we find this formulation of the rule inapplicable here. First of all, and as just noted, *Lang* dealt with intentional misconduct and Whittaker's "mistake" does not fall into that category. But, second, if the *Lang* court meant to hold that relief is precluded when a default is caused in part by a mistake or error of judgment by the client and in part by attorney oversight or neglect, we simply disagree. This case presents a paradigm of such a combination and we have no difficulty in concluding that relief is nonetheless appropriate.

Other decisions have also included language suggesting that any responsibility on the part of the client will preclude relief under the mandatory provision of section 473, subdivision (b). However, in those cases, either the client or the attorney was the sole and clear cause of the default or dismissal.

None of those cases required the court to consider the question of dual causation that is present in this case. In *Yeap, supra,* 60 Cal.App.4th 591, for example, the Court of Appeal explained that "[t]he only question is whether or not the dismissal was in fact caused by attorney neglect rather than, for example, actions of the client or an intentional strategic decision. [Citations.]" (*Id.* at pp. 601-602.) However, in that case, there was "nothing to suggest that the client was in any way responsible for [the errors that lead to the order that effectively dismissed the case] or that [the errors] represented a deliberate strategic decision." (*Id.* at p. 602.) Although not cited by Benedict, *J.A.T. Entertainment, supra,* 62 Cal.App.4th 1485, contains language similar to *Yeap:* " '[t]he purpose of the statute was to alleviate the hardship on parties who *lose their day in court* due solely to an inexcusable failure to act on the part of their attorneys.' [Citation.]" (*J.A.T. Entertainment, supra,* 62 Cal.App.4th at p. 1494, quoting *Huens v. Tatum* (1997) 52 Cal.App.4th 259, 264 [60 Cal.Rptr.2d 438].) But, in that case as in *Yeap,* the trial court had unequivocally found that the dismissal was due to counsel's neglect. (*J.A.T. Entertainment, supra,* 62 Cal.App.4th at p. 1492; see also *Todd, supra,* 34 Cal.App.4th at p. 991 [stating " '[t]he only limitation is when the court finds [that] the default [or dismissal] was not in fact the attorney's fault, for example when the attorney is simply covering up for the client . . . .' "].)

*Cisneros v. Vueve* (1995) 37 Cal.App.4th 906 [44 Cal.Rptr.2d 682] (*Cisneros*) presents the opposite situation of *Yeap* and *J.A.T. Entertainment.* In *Cisneros,* the defendants were alone responsible for the entry of default. (See *Cisneros, supra,* 37 Cal.App.4th at p. 910.) In fact, when default was entered, defendants had not yet retained counsel. (*Ibid.*) The *Cisneros* decision considered whether the negligence of later-retained counsel in permitting the entry of default *judgment* was adequate to grant mandatory relief under section 473, subdivision (b). (See *Cisneros, supra,* 37 Cal.App.4th at p. 910.) The court examined the language of the statute, which requires that the attorney be the cause in fact of the entry of *default,* and concluded that because counsel had not contributed to the entry of default, defendants were not entitled to relief under the mandatory provision of section 473, subdivision (b). (*Cisneros, supra,* 37 Cal.App.4th at pp. 910, 912.) The *Cisneros* decision explains that "[n]othing in the legislative history of the 1988 and 1991 amendments . . . indicates that the Legislature intended mandatory relief for neglectful clients who allow their default to be entered simply because that neglect is compounded by attorney neglect in permitting the judgment to be perfected." (*Id.* at p. 911.) *Cisneros* is not instructive because, in that case, as in *Yeap, J.A.T. Entertainment* and other cases, the default was not caused by the mistaken or neglectful conduct of *both* the attorney and the client, as is the case here.

Lastly, we note 'that the legislative history of the 1988 amendments to section 473 contains broad language similar to that seen in some of the

cases. (See Sen. Davis, letter to Governor George Deukmejian re: Sen. Bill No. 1975 (1987-1988 Reg. Sess.) Sept. 14, 1988 ["Clients who have done nothing wrong are often denied their opportunity to defend themselves, simply because of the mistake or inadvertence of their attorneys in meeting filing deadlines."]; Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1975 (1987-1988 Reg. Sess.) as amended Aug. 9, 1988, p. 2 [will ensure that a party " 'who is truly not at fault will not be held vicariously liable for an attorney's indiscretion' while attempting to balance the burdens caused opposing parties when a default judgment is vacated under section 473"].) However, we do not find much guidance in this broad and ambiguous language in the legislative history either, because we find no indication that these statements reflect the Legislature's considered opinion on this unique situation of dual causation.

In sum, we reject Benedict's suggestion that Whittaker's mistaken description of the manner in which service was attempted precludes mandatory relief under section 473, subdivision (b). We reach this conclusion based on the language of the statute, the standard of causation adopted in *Milton*, and the policy favoring determination on the merits, not by default. (See, e.g., *Elston v. City of Turlock* (1985) 38 Cal.3d 227, 233, 235 [211 Cal.Rptr. 416, 695 P.2d 713].) Inasmuch as respondents' counsel submitted declarations indicating ways in which counsel's mistake or neglect caused the entry of default, the trial court properly granted the requested relief, even though Whittaker's mistakes were an additional cause in fact of the entry of default.

B., C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

## IV. Disposition

We affirm.[4]

Kline, P. J., and Ruvolo, J., concurred.

---

*See footnote, *ante*, page 923.

[4]Inasmuch as appellant's request for judicial notice filed on September 5, 2000, relates exclusively to the issues presented in the cross-appeal, it is denied as moot.