Filed 2/18/15  Cedarwood Young v. Cycle Link CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CEDARWOOD-YOUNG COMPANY, | B249442 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC451253) |
| v. | |
| CYCLE LINK (U.S.A.), INC., et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Richard E. Rico, Judge.  Affirmed.

Horvitz & Levy, Barry R. Levy, H. Thomas Watson, and Mark A. Kressel; Dentons US, Felix Thomas Woo and Judith Sidkoff for Defendants and Appellants.

Hill, Farrer & Burrill, Neil D. Martin and Dean E. Dennis for Plaintiff and Respondent.

Defendants and appellants Cycle Link (U.S.A.), Inc. (Cycle Link), Bright Eagle, Inc. (Bright Eagle), Ming Xi Wu (Wu) (collectively, the Wu defendants) and Zhejian Ji'An Paper Packet Co., Ltd. (Ji'An)[1] appeal from the default judgment entered against them, jointly and severally, and in favor of Cedarwood-Young Company (Cedarwood) after the trial court granted terminating sanctions against the Wu defendants for discovery abuses and denied Ji'An relief from entry of default and default judgment under Code of Civil Procedure section 473.[2]  We affirm the judgment as to all defendants.

## BACKGROUND

Cedarwood filed the instant action on December 14, 2010, seeking declaratory relief and damages for breach of seven contracts to ship waste paper to China. Cedarwood alleged that Cycle Link and Ji'An forced Cedarwood to accept reductions to agreed-upon contract prices under economic duress by threatening to reject shipments that had arrived in China or were en route.  Cedarwood further alleged that Wu, Bright Eagle, Cycle Link, and Ji'An were operated as a single enterprise and were the alter egos of each other.

Cedarwood served Cycle Link and Bright Eagle, both California corporations, with the summons and complaint.  Wu, a resident of China doing business in California, and Ji'An, a Chinese company, initially were not served.

On January 17, 2012, Cedarwood filed a second amended complaint, the operative pleading in this action, after the trial court sustained, with leave to amend, demurrers by Cycle Link and Bright Eagle to the initial and first amended complaints.

**Terminating sanctions and default judgment against Wu defendants**

*Cedarwood's first motion to compel deposition*

On August 4, 2011, Cedarwood served deposition notices for the corporate persons most knowledgeable (PMK) for Cycle Link and Bright Eagle, as well as an

---

[1]     The Wu defendants and Ji'An are referred to collectively as defendants.

[2]     All further statutory references are to the Code of Civil Procedure.

2

individual deposition notice for Haiying Snider, a corporate officer of Bright Eagle. The depositions were set for August 30, 31, and September 1, 2011.

None of the defendants served objections to the deposition notices, nor did they seek to quash them or seek a protective order. On August 23, 2011, William L. Niu (Niu), counsel for Cycle Link and Bright Eagle, informed Cedarwood's counsel that he was not available on the noticed dates because he was in trial. Niu promised to provide alternate dates, but he never did.

On October 14, 2011, Cedarwood filed a motion to compel attendance at the noticed depositions. In a subsequent email exchange between counsel, Niu identified Wu as the PMK for Cycle Link and Bright Eagle and offered November 29 and December 1, 2011, as proposed deposition dates. On October 26, 2011, Cycle Link and Bright Eagle filed an opposition to the motion to compel, arguing that Cedarwood had not yet served all of the defendants in the action, and that a single deposition of Wu, who had already been identified as the PMK for both Cycle Link and Bright Eagle but who resided in China, should not take place until service was complete. Bright Eagle also argued that Snider was no longer affiliated with the company and did not have to appear for deposition.

On November 8, 2011, the trial court granted the motions to compel the PMK depositions and ordered Wu's deposition to take place before December 2, 2011. The PMKs were ordered to produce documents and to testify with respect to the following subjects: the business relationships, financial transactions, and commingling of funds among Cycle Link, Bright Eagle, Ji'An, and Wu, and questions about Ji'An and its business affairs. The trial court denied, without prejudice, the motion to compel Snider's deposition.

### *Cedarwood's second motion to compel deposition*

Wu's first deposition session as Cycle Link's and Bright Eagle's PMK took place on November 18, 2011. During that deposition, Cedarwood served Wu individually and attempted to serve Wu on behalf of Ji'An as well. Wu stated that he could not accept service on behalf of Ji'An.

3

Wu's deposition as Cycle Link's and Bright Eagle's PMK continued on June 5, 2012. When Cedarwood's counsel questioned Wu about his knowledge regarding Ji'An's business affairs, Niu suspended the deposition to seek a protective order precluding examination of Wu with regard to Ji'An. Cedarwood's counsel asked Niu how promptly a motion for protective order would be brought, and Niu said he would call the court clerk to obtain the earliest possible date and that he would "make the call tomorrow, let you know."

A week later, having heard nothing from Niu, Cedarwood's counsel sent Niu a letter urging him to take prompt action on the motion for a protective order. Niu never filed a motion for a protective order but instead filed an ex parte motion to continue the July 16, 2012 trial date. Cedarwood stipulated to the continuance, which was subsequently granted.

On June 28, 2012, Wu, Cycle Link, and Bright Eagle filed an answer to the second amended complaint. Cycle Link also filed a cross-complaint and a subsequent first amended cross-complaint against Cedarwood seeking damages for shipment delays and failure to provide necessary documentation.

On August 7, 2012, Cedarwood served a notice of resumed deposition of Wu, scheduled for August 24, 2012. On August 20, Niu informed Cedarwood that Wu was unavailable and that the deposition had to be postponed. In a series of subsequent email exchanges, Cedarwood's counsel stated that the June 5, 2012 deposition had taken place pursuant to a court order compelling Wu's attendance, that Niu had adjourned the deposition to seek a protective order but had not done so, and that Cedarwood would proceed with the August 24 deposition and take a certificate of non-appearance if Wu did not attend. Defendants did not serve any objections, nor did they seek a protective order or move to quash the deposition subpoena. Wu did not appear for his deposition.

On September 26, 2012, Cedarwood filed a motion for issue and evidence sanctions establishing alter ego liability, or alternatively, for an order compelling Wu to appear and answer questions regarding Ji'An and the financial and business relationships among the defendants. Before the November 26, 2012 hearing on the motion, Wu agreed

4

to attend and resume his deposition on October 18, 2012. Cedarwood took its motion off calendar.

### *Cedarwood's third motion to compel deposition*

At his October 18, 2012 deposition, Wu refused to answer questions about his commissions, how his compensation was calculated, and the identity of other U.S. companies from whom Ji'An and/or Wu purchased paper in 2008, on the ground that the responses were "trade secrets." For example, the following exchange occurred when Cedarwood's counsel asked Wu about companies with whom he had contracted to purchase paper:

"Q: In 2008 did you, on behalf of Ji An, sign contracts to purchase paper from companies other than [Cedarwood]?

"A: Yes.

"Q: What companies did you sign such agreements with other than [Cedarwood]?

"[¶] . . . [¶]

"A: I can't tell you where are the companies that I have signed contracts with, but there were some.

"Q: Can you tell me if there have been any in California?

"A: Yes.

"Q: Do you remember the names of any of the California companies?

"A: The name of the companies is a trade secret. I can't tell you.

"[¶] . . . [¶]

"Q: Do you know the names of the companies, without telling me what they are, that you negotiated the purchase of paper for on behalf of Ji An from 2008 to the present?

"THE INTERPRETER: Interpreter clarification. Did you say without disclosing of the name of company, but the name of the company.

5

"[CEDARWOOD'S COUNSEL]: Do you know the names without disclosing them. I'm trying to figure out --

"THE INTERPRETER: If he knows or not.

"THE WITNESS: I do know.

"[¶] . . . [¶]

"Q: Do you know the names of the companies without telling me the names of the businesses that you contracted with to purchase wastepaper from 2008 to the present on behalf of Cycle Link?

"A: I don't necessarily remember all the names of the companies. I could remember some, but not all of them.

"Q: And is it true that you are refusing to tell me the identity of the companies that you do remember that you purchased paper from on behalf of Cycle Link from 2008 to the present?

[¶] . . . [¶]

"A: That's correct. It is trade secret."

Wu's refusal to answer questions at his October 18, 2012 deposition on the ground that they elicited responses that were trade secrets prompted Cedarwood to file, on November 7, 2012, a motion for issue and evidence sanctions, or alternatively, to compel Wu's deposition testimony. The hearing on the motion was set for December 4, 2012.

Defendants filed no opposition to Cedarwood's motion, and on November 27, 2012, Cedarwood filed a notice explaining that defendants' opposition had been due on November 19, but none had been filed.

At the December 4, 2012 hearing on Cedarwood's motion, the Wu defendants brought an ex parte application seeking to continue the hearing, claiming they had not received the motion until November 29, 2012. In response, Cedarwood produced a delivery receipt confirming that defendants' counsel had received the moving papers on November 7, 2012.

6

The trial court denied the Wu defendants' ex parte application, denied Cedarwood's motion for issue and evidence sanctions, but granted the alternative motion to compel Wu to answer the disputed questions he claimed were trade secrets. Noting that the party asserting trade secret objections has the burden to establish their existence, the trial court concluded: "In this case, Wu has not opposed the instant motion and has not met this burden. Further, as [Cedarwood] points out, Wu/Cycle Link never filed a motion for protective order." The trial court ordered monetary sanctions against Wu and ordered him to appear for deposition and respond to questions within 30 days, or at any other time agreed to between counsel.

### *Cedarwood's motion for terminating sanctions*

Wu's deposition was noticed for January 4, 2013. On January 3, 2013, Niu called Cedarwood's counsel stating that Wu would not appear and that he would apply ex parte to modify the order requiring Wu's deposition. Niu never filed the ex parte application.

On January 24, 2013, Cedarwood filed an ex parte motion for an order shortening time for notice of motion and motion for terminating sanctions, evidence sanctions, or alternatively, to compel Wu's deposition. Defendants did not oppose the ex parte application, and the trial court set a February 8, 2013 hearing date.

On February 1, 2013, defendants filed their opposition to Cedarwood's motion. The opposition was supported by Wu's declaration stating that he was a resident of China, that he had appeared for three sessions of deposition in the U.S., and that he had Meniere's disease and was under doctor's orders not to travel until the end of February. Attached to Wu's declaration was a doctor's note in Chinese, and an uncertified translation stating that Wu had been diagnosed with Meniere's disease and recommending against long-distance travel for 2-3 months.

In reply, Cedarwood challenged Wu's veracity, noting that he had not previously disclosed any medical condition and had not sought relief from the order requiring him to appear for deposition. Cedarwood objected to the doctor's note attached to Wu's declaration on the ground that there was no certified translation of the note. Two days before the February 8 hearing, Niu filed a supplemental declaration stating that he had

7

informed Cedarwood's counsel on the previous day that Wu would be available for deposition on February 6, 7, or 9, but Cedarwood's counsel was unavailable on those days.

At the February 8, 2013 hearing, the trial court issued a tentative order granting terminating sanctions, noting that the court did not find Wu's statements about his medical condition to be credible. The court sustained Cedarwood's objection to the doctor's note and the uncertified translation.

Following argument by the parties, the trial court modified its tentative order, allowing Wu one last chance to comply with the court's orders:

> "What I'm inclined to do, counsel, with a certain hesitation I'll indicate, because I think that terminating sanctions would be upheld given Mr. [Wu's] continued, basically thumbing his nose at the court. If he's here, I would order him to appear at [Cedarwood's] convenience for deposition. If he does not answer questions or if he -- you know, if there are any problems or if the deposition is stopped for any reason that is not [Cedarwood's] doing, the court will simply then order terminating sanctions at that point. . . . The court's order will be that Mr. [Wu] will be deposed on the date picked by [Cedarwood], obviously, with ten days notice. If Mr. [Wu] does not show, the court will, upon motion -- I'll even accept [an] ex parte motion at that point -- grant terminating sanctions."

The trial court's written order filed on February 26, 2013 states:

> "Mingu Wu is to submit to deposition at a date and time set by [Cedarwood's] counsel and to answer the questions posed. If there is a failure to appear for deposition or to submit to questioning then on ex parte application the Court will enter the relief set forth in its original tentative of this date, i.e., to grant [Cedarwood's] motion for terminating sanctions, strike defendants' answers and cross-complaint, and enter defendants' default in this action."

### *Cedarwood's ex parte application for terminating sanctions*

Wu's deposition resumed on February 28, 2013. When asked to identify other U.S. companies from whom Cycle Link purchased paper in 2008, Wu responded that could not remember the identity of any company, contradicting the deposition testimony he gave in October 2012 that he remembered the names of those companies but would

8

not disclose them because they were trade secrets. Cedarwood's counsel suspended the deposition at that point to seek further court orders.

On March 4, 2013, Cedarwood's counsel gave ex parte notice that he would appear the following day to seek terminating sanctions based on Wu's conduct at his February 2013 deposition. Defendants filed no opposition, but their counsel Niu appeared telephonically at the March 5, 2013 ex parte hearing. The record on appeal includes no transcript of that hearing. The trial court's minute order dated March 5, 2013, states: "The ex parte application is called for hearing and granted. [¶] The Court strikes defendants' Answer and orders the Cross-Complaint dismissed. [¶] Plaintiff to submit the Order after Hearing." The trial court's order filed on March 28, 2013, states in part:

> "After making four motions related to the deposition of defendants, the Court published a tentative ruling striking the answer of defendants [Cycle Link, Wu, and Bright Eagle] and the cross complaint of [Cycle Link] and entering defaults. On February 8, 2013, the Court gave defendants one last chance to allow [Cedarwood] to depose [Wu] on the condition that if the witness did not appear and submit to the questions, [Cedarwood] could come in *ex parte* and have the court issue its previous tentative ruling establishing terminating sanctions.

> "Mr. Wu appeared for his deposition but immediately showed his commitment to evading [Cedarwood's] questions. He simply would not answer the questions posed. Instead, he was non-responsive and evasive. The responses establish a clear pattern of evasions which constitutes a violation of the February 8 Order."

The trial court granted Cedarwood's motion for terminating sanctions, struck defendants' answers and cross-complaint, and entered default against defendants.

Cedarwood requested entry of default judgment against Cycle Link, Bright Eagle, and Wu on the basis of the March 5, 2013 order for terminating sanctions and against Ji'An on the basis of its default for failure to respond to the second amended complaint.

Defendants filed an opposition arguing that any judgment should not be entered against all four defendants jointly and severally.

On April 19, 2013, the trial court entered judgment against all defendants, jointly and severally, in the amount of $1,499,268.78, including principal and prejudgment interest, with an additional $12,594.80 in costs.

### *Defendants' postjudgment motion to set aside terminating sanctions*

On April 23, 2013, the Wu defendants filed a motion for relief to set aside the terminating sanctions order based upon sections 1008 and 2025.Defendants argued that terminating sanctions were disproportionately punitive in light of the issues at stake and the extensive discovery they had already provided. Defendants further argued that the ex parte notice was insufficient, and although their counsel Niu appeared telephonically, he was out of the country at the time and could not sufficiently prepare for the hearing.

Cedarwood opposed the motion, arguing that defendants failed to meet the requirements for reconsideration under section 1008, their sole basis for relief had been a motion for relief from default under section 473, and terminating sanctions had not been granted entirely on an ex parte basis, but had been tentatively granted following a noticed motion and then effectively held in abeyance pending Wu's one last chance to comply with the order compelling him to appear and answer questions at his deposition.

The trial court denied defendants' motion, and found the defendants were in default and had no standing to bring any motions without first obtaining relief from default. The court further found that it had not granted terminating sanctions on ex parte notice but after a noticed motion followed by an ex parte application when Wu failed to comply with the court's order at his "last chance" deposition.

## Default and default judgment against Ji'An

### *Entry of default against Ji'An*

Cedarwood served the second amended complaint on Ji'An by serving Wu at his June 5, 2012 deposition as Cycle Link's PMK. During the deposition, Wu's attorney Niu objected to questions about agreements between Cedarwood and Ji'An. Niu indicated that he would seek a protective order "to prevent [Cedarwood] from asking questions

10

relating only to the causes of action against [Ji'An] until after [Ji'An] has retained counsel and appears."

Niu did not subsequently seek a protective order, but instead brought an ex parte motion to continue the trial. In a declaration filed in support of the ex parte, Niu stated that he was in the process of being retained as counsel for Ji'An: "Counsel for Defendants Cycle Link, Wu, and Bright Eagle is being retained by Defendant [Ji'An] and said defendant will be filing a responsive pleading by July 5, 2012.

On July 20, 2012, Cedarwood's counsel emailed Niu, noting the June 5, 2012 service on Ji'An and the absence of any responsive pleading. Cedarwood's counsel stated that, as a courtesy, Cedarwood would refrain from taking Ji'An's default if a responsive pleading was received by July 24, 2012. Niu responded by email on July 24, 2012, stating: "We will have our client's response motion email to you by this Thursday morning."

A responsive pleading by Ji'An was never emailed or filed, and Ji'An's default was entered on August 3, 2012.

### Ji'An's motion to set aside default

On January 31, 2013, Ji'An "specially appeared" through attorney Gene Tu and filed an ex parte application to quash service of summons or to shorten time for a motion to quash. The trial court denied the ex parte application.

The following day, Tu, again "specially appearing" for Ji'An, filed an ex parte application to set aside the default under section 473, subdivision (d), to quash service of summons, or alternatively to shorten time for a motion to do so. The motion was based on allegedly ineffective service on Wu as Ji'An's agent. The trial court denied the ex parte but allowed the noticed motion to proceed.

Ji'An argued in its motion that Wu was not authorized to accept service of process on Ji'An's behalf, that Ji'An is a foreign corporation that does not maintain any offices in the United States and has no agent for service of process in the United States, and that Cedarwood must comply with the Hague Service Convention.

11

Cedarwood opposed Ji'An's motion, arguing that Wu, Cycle Link's admitted agent for service of process, was properly served either as Ji'An's agent or as the agent for service of process of a Ji'An subsidiary. In support of its opposition, Cedarwood presented as evidence deposition testimony by Wu stating that Cycle Link was Ji'An's American procurement agent. Cedarwood also provided evidence that Cycle Link was a Ji'An subsidiary.

At the March 5, 2013 hearing, the trial court denied Ji'An's motion to set aside the default, finding service on Wu as Ji'An's agent to be proper. Judgment against all defendants was filed on April 19, 2013.

### Ji'An's second motion to set aside default

On April 23, 2013, Ji'An filed a second motion for relief from entry of default, this time based on attorney fault under section 473, subdivision (b). The motion was supported by Niu's declaration stating that he had made a mistake of law as to whether Ji'An could be served through Wu and that he had been surprised by the default because Cedarwood's attorneys had not notified him that they intended to take Ji'An's default. Niu's declaration does not state, however, that he was Ji'An's attorney or that he represented Ji'An in this or any other case. Rather, Niu's declaration expressly states that he was not Ji'An's counsel.

Paragraph 6 of Niu's declaration states the following regarding his status at the time Cedarwood first attempted to serve Wu as Ji'An's agent: "I informed [Cedarwood's counsel] that I was not authorized to accept service on Ji'An's behalf . . . [and that he] should proceed through the Hague Convention to effectuate service on Ji'An. I also asked [Cedarwood's counsel] to notify me if he did in fact complete service of process on Ji'An, as I intended to represent Ji'An in this suit if it was properly brought before the Court's jurisdiction."

In paragraphs 11 and 12, Niu's declaration states that when Cedarwood attempted a second time to serve Wu as Ji'An's agent: "I explained that neither I nor Mr. Wu was authorized to accept service on behalf of Ji'An. . . . [¶] . . . I had not yet been directed to formally represent Ji'An in this proceeding . . . ."

12

Cedarwood opposed Ji'An's motion, pointing out that Niu's carefully worded declaration avoided any claim of an attorney-client relationship. Cedarwood also argued that Ji'An's motion was an improper motion for reconsideration under section 1008 and that Niu's declaration did not demonstrate mistake but rather a tactical decision not to respond to the complaint.

In its reply, Ji'An denied any deliberate strategy to allow its default and argued that had it been given advance warning that a default would be taken, Niu would have filed a motion challenging service of process. Ji'An argued that section 1008 did not apply to motions brought under section 473, subdivision (b). In a supplemental declaration filed in support of Ji'An's reply, Niu again declined to state that he had been retained as Ji'An's attorney. His supplemental declaration states: "[Cedarwood's] suggestion that I was never counsel for JiAn is incorrect. As I stated in my initial declaration, I expressly informed [Cedarwood's] counsel that if Ji'An was served, I would be representing it in this case."

After Cedarwood's counsel notified Ji'An's attorneys that Niu had been given written warning that default would be entered if Ji'An did not respond to the second amended complaint, Ji'An filed a "corrected reply memorandum" withdrawing that argument and an "amended supplemental declaration" by Niu explaining that he had no recollection of that warning when he prepared his original declaration.

At the May 15, 2013 hearing, the trial court denied Ji'An's motion. The trial court ruled that the motion, brought more than six months after the August 3, 2012 default, was untimely. The court further concluded that Niu's own declaration supported Cedarwood's arguments that Niu was never Ji'An's counsel, that Ji'An had made a strategic decision not to appear in the case, and that there was no attorney mistake that warranted relief. Finally, the court found that Ji'An's motion was an improper motion for reconsideration under section 1008.

### Defendants' motion to vacate and correct default judgment

On May 17, 2013, the Wu defendants joined a motion filed by Ji'An to vacate and correct the default judgment under section 473, subdivision (d). Defendants argued that

13

judgment was void because it held non-parties to the contracts liable on an alter ego theory even though there were no facts pled to justify alter ego liability.

Cedarwood opposed the motion, arguing that its alter ego allegations were sufficient. The trial court agreed and denied defendants' motion.

Defendants filed two separate notices of appeal. The first, filed on June 17, 2013, was from the April 19, 2013 default judgment and the June 23, 2013 order denying their motion to vacate the default judgment pursuant to section 473, subdivision (d). The second, filed on September 13, 2013, was from the May 15, 2013 postjudgment order denying motions to set aside defaults. We granted Cedarwood's unopposed motion to consolidate the two appeals.

## DISCUSSION

### I. Terminating sanctions

The Wu defendants argue that the terminating sanctions entered against them were improperly issued by ex parte application, denying them their due process right to notice, and that the default judgment must therefore be reversed.

#### A. Notice

Discovery sanctions must be sought by a noticed motion. Section 2023.030, the statute authorizing sanctions for misuse of the discovery process, expressly states that a court may impose sanctions "after notice to any affected party, person, or attorney, and after opportunity for hearing." "In addition to the statutory requirement for notice, due process requires that notice be given prior to the imposition of sanctions." (*Alliance Bank v. Murray* (1984) 161 Cal.App.3d 1, 5 (*Alliance Bank*).)

A discovery order that conditionally authorizes an ex parte application for sanctions and that conditionally orders a sanctions award for violation of the order is invalid. (*Alliance Bank, supra*, 161 Cal.App.3d at p. 6 [order conditionally authorizing ex parte application for attorney fees if opposing party failed to appear at ordered deposition held "void"].) Equally invalid are discovery sanctions awarded on an ex parte basis. (*Ibid.*; *Sole Energy Co. v. Hodges* (2005) 128 Cal.App.4th 199, 208.) Such sanctions contravene the due process requirements of the federal and state constitutions

14

as well as the procedural requirements of the discovery statutes. (*Alliance Bank, supra*, at p. 6.) If the person against whom ex parte sanctions are sought voluntarily appears at the hearing on the ex parte application and opposes it on the merits, however, the person may forfeit any appellate challenge to the sanctions imposed. (*Id.* at pp. 5-6.) Such is the case here. The Wu defendants, through their counsel, Niu, appeared telephonically at the March 5, 2013 ex parte hearing. The record does not indicate, nor do the Wu defendants argue on appeal, that Niu raised any objection at that hearing based on insufficient notice or the ex parte nature of the proceedings.**3**

The facts here are similar to those in *Alliance Bank*, a case in which we find dispositive guidance. In *Alliance Bank*, the trial court, in ordering the defendant to appear for deposition, ruled that the plaintiff could seek terminating sanctions upon an ex parte application if the defendant did not comply with the order. (*Alliance Bank, supra*, 161 Cal.App.3d at pp. 3-4.) When the defendant failed to appear for deposition, the plaintiff applied ex parte for sanctions. The defendant appeared, through counsel, at the hearing on the ex parte application and opposed it on the merits. At the hearing, the trial court issued terminating sanctions against the defendant by striking his answer and entering a default. (*Id.* at pp. 4-5, 7-9.)

The appellate court in *Alliance Bank* held that the trial court's initial order permitting the plaintiff to seek sanctions on an ex parte basis was "invalid for being in excess of the court's jurisdiction" but nevertheless affirmed the sanctions order. (*Alliance Bank, supra*, 161 Cal.App.3d at p. 6.) The court concluded that the defendant, by appearing at the ex parte hearing and opposing it on the merits, had forfeited any contention as to defective notice and had impliedly consented to "any exercise of

**3** Defendants did not provide a reporter's transcript of the March 5, 2013 hearing; consequently, we do not know what arguments the Wu defendants made at that hearing. Defendants have the burden of establishing error in the trial court proceedings below and of preserving arguments they may assert on appeal by raising them in the trial court below. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295-1296; *Estrada v. Ramirez* (1999) 71 Cal.App.4th 618, 620, fn. 1 [burden is on appellant to provide adequate record on appeal to demonstrate error; failure to do so "precludes an adequate review and results in affirmance of the trial court's determination"].) They failed to sustain that burden.

15

jurisdiction in excess of the court's authority." (*Id.* at pp. 7-9.) In so doing, the court in *Alliance Bank* distinguished an earlier case, *Duggan v. Moss* (1979) 98 Cal.App.3d 735, in which the appellate court reversed terminating sanctions imposed on an ex parte basis because the sanctioned party had been given no opportunity to oppose them. (*Alliance Bank, supra*, at p. 9.)

Here, as in *Alliance Bank*, the Wu defendants appeared through their counsel at the hearing on Cedarwood's ex parte application for terminating sanctions and had the opportunity to oppose the sanctions motion on the merits. By doing so, they waived any argument on appeal that they had insufficient notice of the motion. (*Alliance Bank, supra*, 161 Cal.App.3d at pp. 7-8.)

We note, moreover, that the trial court's February 26, 2013 order authorizing the ex parte sanctions motion, while ordinarily improper, was issued following a noticed hearing on a previous motion for terminating sanctions. The Wu defendants filed a written opposition to that motion and appeared and argued at the February 8, 2013 hearing on the motion. At the outset of the February 8, 2013 hearing, the trial court's tentative ruling had been to grant Cedarwood's motion for terminating sanctions; however, the court modified its ruling to give Wu one last chance to appear for deposition and to answer Cedarwood's questions. The court admonished defendants' counsel that if Wu failed to do so, Cedarwood's motion for terminating sanctions would be granted. The Wu defendants thus had ample notice of what arguably could be considered a continued hearing on the motion for terminating sanctions.

### B. Propriety of sanctions

"A trial court may impose sanctions, including terminating sanctions, for a party's misuse of the discovery process, which includes disobedience of a court order. [Citation.]" (*Sole Energy Co. v. Hodges, supra*, 128 Cal.App.4th at p. 207; §§ 2023.010, subd. (d), (g); 2023.030, subd. (d)(1), (4).) Failing to respond to an authorized method of discovery and disobeying a court order to provide discovery are both misuses of the discovery process. (§ 2023.010, subd. (d), (g).) Terminating sanctions are justified when the discovery violation "'is willful, preceded by a history of abuse, and the evidence

16

shows that less severe sanctions would not produce compliance with the discovery rules.'" (*Parker v. Wolters Kluwer United States, Inc.* (2007) 149 Cal.App.4th 285, 297, fn. omitted.)

We review a trial court's order imposing discovery sanctions for abuse of discretion. (*Karlsson v. Ford Motor Co.* (2006) 140 Cal.Ap.4th 1202, 1217.) We review the factual determinations that are the basis for the trial court's exercise of its discretion under the substantial evidence standard. (*Obregon v. Superior Court* (1998) 67 Cal.App.4th 424, 430.)

There is substantial evidence that Wu willfully failed to comply with the trial court's orders to appear for deposition and to answer questions. During his first deposition session, Wu refused to answer about Cycle Link's and Ji'An's business relationships on trade secrecy grounds. Although Wu's counsel suspended the deposition stating that he would seek a protective order precluding that line of questioning, no protective order was ever sought or obtained. Wu refused to appear for a subsequently scheduled deposition, claiming to be out of the country and unable to travel for a month because of illness, but when served with a motion to compel, offered to appear for deposition that week. When given a final chance to avoid terminating sanctions by attending his deposition and answering questions, Wu claimed to not remember answers to questions he had previously claimed were trade secrets. The record discloses no abuse of discretion in the trial court's imposition of terminating sanctions or in the default judgment entered on the basis of those sanctions.

## II. Motion to set aside default and default judgment against Ji'An

Ji'An contends the trial court erred by denying it relief from the default and default judgment under the mandatory relief provision of section 473, subdivision (b) based on attorney fault.

### A. *Applicable law and standard of review*

Under section 473, subdivision (b), a party is entitled to relief from a default judgment caused by attorney fault. The statute provides in relevant part: "[T]he court shall, whenever an application for relief is made no more than six months after entry of

judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." (§ 473, subd. (b); *Hossain v. Hossain* (2007) 157 Cal.App.4th 454.)

Relief under section 473, subdivision (b) is not mandatory if the court finds that the default was not in fact caused by attorney error. (*Rodrigues v. Superior Court* (2005) 127 Cal.App.4th 1027, 1033; *Milton v. Perceptual Development Corp.* (1997) 53 Cal.App.4th 861, 867.) The statute "protects only the innocent client" and it does not provide relief for the "culpable client who participates in conduct which led to the default or dismissal." (*Lang v. Hochman* (2000) 77 Cal.App.4th 1225, 1251-1252.) In determining whether the default was in fact caused by attorney error, the trial court assesses both the attorney's credibility and whether the attorney's inaction was a casual factor. (*Milton, supra*, at p. 867.)

If the trial court's determination regarding mandatory relief under section 473, subdivision (b) turns on disputed facts, that determination is reviewed under the substantial evidence standard. If the facts are undisputed, de novo review applies. (*Carmel, Ltd. v. Tavoussi* (2009) 175 Cal.App.4th 393, 399.)

### B. *Substantial evidence supports the trial court's determination*

The trial court found that Ji'An was not entitled to relief from default as the result of attorney error because the declaration submitted by attorney Niu in support of Ji'An's motion for relief from default indicated that Niu had never represented Ji'An as its attorney. Substantial evidence supports that finding.

In an April 15, 2013 declaration submitted in support of Ji'An's motion for relief from entry of default, Niu states the following about his relationship with Ji'An at the time Cedarwood first attempted to serve Wu as Ji'An's agent in November 2011: "I informed [Cedarwood's counsel] that I was not authorized to accept service on Ji'An's

18

behalf. . . . I also asked [Cedarwood's counsel] to notify me if he did in fact complete service of process on Ji'An, as I intended to represent Ji'An in this suit if it was properly brought before the Court's jurisdiction." Niu's intended representation of Ji'An never occurred, however, because as he states later in the same declaration: "I did not believe the attempted service of Ji'An through Mr. Wu in November 2011 was proper or sufficient to impose jurisdiction over Ji'An."

Niu's declaration further states that he did not believe Cedarwood's second attempt, in June 2012, to serve Wu as Ji'An's agent was proper, and that he still had not been retained as Ji'An's counsel: "Although I had not yet been directed to formally represent Ji'An in this proceeding, in part because I did not believe there was any need to appear in the action, I had already determined that in addition to there not being proper jurisdiction over Ji'An as a result of improper service, Ji'An also had a strong argument to dismiss the case because of a forum selection clause in the agreements it entered into with [Cedarwood]."

Niu makes clear in his declaration that he continued to believe service on Ji'An had not been properly effected as of late July 2012, and after default was entered against Ji'An in August 2012: "Because I originally did not believe service on Ji'An was proper, I did not believe Ji'An was required to file a response to the Second Amended Complaint. And, later, I believed that even though the clerk had entered [Cedarwood's] request of entry of default, it was only because the clerk did not realize that the service was improper, and that once the Court reviewed the matter, the default and service would be vacated."

When Cedarwood argued that Niu's declaration could not serve as the basis for relief from default because Niu was never Ji'An's attorney, Ji'An submitted a supplemental declaration by Niu dated May 8, 2013. That declaration, rather than expressly acknowledging an attorney-client relationship, alludes to a possible future representation conditioned upon proper service on Ji'An: "[Cedarwood's] suggestion that I was never counsel for Ji'An is incorrect. As I stated in my initial declaration, I expressly informed [Cedarwood's] counsel that if Ji'An was served, I would be

19

representing it in this case." Niu's potential future representation of Ji'An never occurred, because Niu insisted throughout the case that Ji'An had never been properly served.

Ji'An argues that section 473, subdivision (b) does not require an affidavit of fault to be signed by the defaulting party's attorney of record, and that the statute only requires the affidavit to be executed by an attorney who represents the client. Ji'An contends that "Niu's declaration made clear that although he had not yet been formally retained to represent Ji'An in this action, he was advising Ji'An as its counsel for the purpose of deciding whether to respond to the complaint or challenge the validity of Cedarwood's service of process." Ji'An further contends that "Niu's declaration made clear he gave Ji'An mistaken advice that the personal service of process on Wu was invalid as to Ji'An, and therefore that Ji'An could simply refuse to file a responsive pleading, which directly resulted in Ji'An's default judgment." There is no evidence to support those contentions. Nowhere in Niu's April 2013 declaration or in his May 2013 supplemental declaration does it state that he advised, or even communicated with Ji'An about this action, or that Ji'An relied on his advice to its detriment.

Substantial evidence supports the trial court's finding that Niu had never represented Ji'An as its attorney in this matter and that Niu's declaration could therefore not serve as the basis for relief under section 473, subdivision (b).[4]

### III. Joint and several liability

Defendants contend joint and several liability was improperly imposed on them because Cedarwood "failed to plead or prove" defendants were alter egos of each other.

---

[4]     Because we conclude substantial evidence supports the trial court's determination that Niu's affidavit of attorney fault could not serve as the basis for relief from the entry of default and default judgment entered against Ji'An because Niu was never Ji'An's attorney, and affirm the denial of Ji'An's motion for relief from default on that basis, we do not address the trial court's alternate grounds for denying relief -- that Ji'An's motion was untimely, that Ji'An's nonappearance in the action was a strategic decision, and that Ji'An's motion for relief from default and default premised on attorney fault was an improper motion for reconsideration under section 1008.

In general, a defendant's default admits the truth of the allegations in a plaintiff's complaint. (*Steven M. Garber & Associates v. Eskandarian* (2007) 150 Cal.App.4th 813, 823.) "A default judgment is appealable only on the issues of jurisdiction and sufficiency of the pleadings [citation]; and, if proof of damages was required before entry of judgment, also on the issue of excessive damages [citation]." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2013) ¶ 2:115, p. 2-65, citing *Corona v. Lundigan* (1984) 158 Cal.App.3d 764, 766-767 and *Uva v. Evans* (1978) 83 Cal.App.3d 356, 362-363.) In other words, issues of proof and sufficiency of the evidence cannot be reviewed on an appeal from a default judgment as to matters admitted by the defendant because of its default. (*Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 288; *Sporn v. Home Depot USA, Inc.* (2005) 126 Cal.App.4th 1294, 1303.)

In the instant case, the second amended complaint alleges that Wu dominated and controlled Cycle Link, Bright Eagle, and Ji'An; that a unity of interest and ownership existed among Cycle Link, Bright Eagle, and Ji'An, such that the three companies were merged; and that recognizing the separate existence of the three companies would promote injustice. These allegations are sufficient to support alter ego liability. (See *Rutherford Holdings, LLC v. Plaza Del Rey* (2014) 223 Cal.App.4th 221, 235-236.)

Defendants cite *Vasey v. California Dance Co.* (1977) 70 Cal.App.3d 742 as support for their argument that the allegations of the second amended complaint are insufficient to impose joint and several liability on them; however, that case is distinguishable. The defendants in *Vasey* appealed from default judgments imposing joint and several liability against them on the basis of a "bare conclusory allegation that the individual and separate character of the corporation had ceased and that [the corporation] was the alter ego of the individual defendants." (*Id.* at p. 749.) The appellate court in *Vasey* reversed the default judgment, noting that in order to prevail, the complaint had to plead "such a unity of interest and ownership that the separate personalities of the corporation and the individuals do not exist, and that an inequity will

21

result if the corporate entity is treated as the sole actor.  [Citations.]" (*Ibid.*)  The allegations of Cedarwood's second amended complaint meet this standard.

The trial court did not err imposing joint and several liability on defendants in the default judgment.

## DISPOSITION

The judgment is affirmed.  Cedarwood is awarded its costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ


We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
HOFFSTADT