Filed 11/25/25  Marriage of Cole CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re MARRIAGE of KIKIANNE and SCOTT COLE. | |
| _____ | A168619, A172369 |
| KIKIANNE COLE, Appellant, | (Contra Costa County Super. Ct. No. D12-03933) |
| v. | |
| SCOTT COLE, Respondent. | |

Scott Cole propounded various discovery requests after Kikianne ("Anne") Cole requested an order setting aside their marital settlement agreement on the basis of fraud, or alternatively, breach of fiduciary duty.[1] The parties wrangled over the sufficiency of Anne's responses for nearly two years, necessitating the involvement of a discovery referee.  The trial court ultimately granted Scott's motion for terminating sanctions after finding that Anne's sixth set of responses to discovery propounded nearly two years before remained deficient, that she had "willfully and broadly" disobeyed the court's

---

[1]      Because the parties share the same last name, we refer to them by their first names for the sake of clarity and intend no disrespect.

1

prior discovery orders, and that she did so despite the previous imposition of monetary sanctions against her. The court subsequently denied Anne's request to set aside the terminating sanctions, rejecting her claim that her discovery failures were attributable to her counsel's mistake, inadvertence, surprise, or neglect.

On appeal, Anne argues the trial court abused its discretion in issuing terminating sanctions and erroneously denied her motion to set them aside. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Request for Order

In January 2020, Anne filed a request for order ("2020 RFO") seeking to set aside the parties' 2015 marital settlement agreement and dissolution judgment on the basis of fraud. She claimed she had been "deceived" during the settlement negotiations about the status of a lawsuit that Scott, an attorney, had worked on during their marriage entitled *Davis v. American Commercial Security Services* (*Davis*). Alternatively, Anne sought an order and finding that Scott breached his fiduciary duty to her by not disclosing information about the *Davis* case. As relevant here, Anne also requested a finding that assets were omitted from the dissolution judgment.

From 2001 to 2012, Anne worked as controller and IT director of Scott's law firm and tracked the firm's cases. In 2012, the *Davis* case received a positive summary judgment result in the trial court that was subsequently reversed on appeal. According to Anne, she was never told *Davis* had been consolidated with another case in which the California Supreme Court granted a petition for review in April 2015. Instead, "either Scott or his attorney" told Anne's attorney that *Davis* was " 'dead in the water,' " and the two acted "in concert" to keep information about *Davis* out of the settlement

negotiations because Scott had "much to lose if the majority of the attorney's fees earned in the Davis case was community property."

The parties executed the marital settlement agreement in November 2015. Anne later discovered Scott had received a multi-million-dollar fee for *Davis* in 2017, following the Supreme Court's reversal in the consolidated case. Anne contended she was entitled to at least half of that fee.

**B. Discovery**

In November 2020, Scott propounded requests for production (set two) and special interrogatories (set two). Among other things, the discovery requests sought documents and information related to the affirmative statements made in Anne's declaration supporting her 2020 RFO. This included her statement that Scott and his attorney had committed fraud during the marital settlement negotiations by telling her attorney that *Davis* was " 'dead in the water' " and not updating her about the status of the case. Scott requested information and documents regarding any statements made by him or his attorney about *Davis* to Anne or her attorneys at the time. He also requested information and documents regarding knowledge Anne or her then-attorneys had about *Davis* and its consolidated case before the Supreme Court, including when they gained such knowledge and what research they had conducted.

Anne admittedly did not respond to these discovery requests by the statutory deadline. After she served her first set of responses, the parties met and conferred. In June 2021, the trial court appointed a referee for discovery motions and disputes.

**C. First Motion to Compel**

Scott filed a motion to compel further responses in July 2021. While the motion was pending, Anne served a second set of responses.

The discovery referee issued a 71-page report with recommended rulings. For approximately two dozen of the challenged requests for production, the referee recommended granting or granting in part the motion. Among other things, the referee recommended that any response from Anne stating an inability to comply with the discovery demand must specify that (1) "*a diligent search* and *reasonable inquiry* has been made in an effort to locate the item demanded"; and (2) the "*reason* the party is unable to comply" is "because the particular item or category [(a)] has never existed, [(b)] has been destroyed, [(c)] has been lost, misplaced, or stolen, or [(d)] has never been, or is no longer, in the possession, custody, or control of the responding party." (See generally Code Civ. Proc., § 2031.230.)[2] Likewise, for approximately 29 of the challenged special interrogatories, the referee recommended granting or granting in part the motion and directed that Anne must furnish information available from sources under her control and that if she did not have sufficient personal knowledge to respond, she " 'must "make a reasonable and good faith effort to obtain the information by inquiry to other natural persons or organizations," unless the information is "equally available to the propounding party." ' " (*Sinaiko Healthcare Consulting, Inc. v. Pacific Healthcare Consultants* (2007) 148 Cal.App.4th 390, 406.) The trial court adopted the referee's report and recommendations.

Anne served a third set of responses. After the parties met and conferred, Anne served a fourth set of responses.

**D. Second Motion to Compel and Monetary Sanctions**

Scott filed a second motion to compel in February 2022. He contended that Anne's fourth set of responses was still not code-compliant and that the

---

[2]     Further undesignated statutory references are to the Code of Civil Procedure.

4

responses contradicted her earlier responses and improperly refused to obtain information or documents from the attorneys representing her at the time of the marital settlement negotiations. The motion also sought monetary, evidentiary, issue, and/or terminating sanctions.

The discovery referee issued a report recommending Anne be ordered to provide further responses to 32 requests for production. He struck the improper preliminary statements and general objections in her responses, and found Anne had not performed a diligent search and reasonable inquiry under section 2031.230. Upon finding that Anne had waived the privilege for attorney-client communications during the marital settlement agreement negotiations by putting them into issue, the referee ruled that documents in the possession, custody, and control of her former attorneys (Steven Hallert and Terence Doyle) and accountant (Richard Wilkolaski) were in Anne's possession, custody, and control, and should be produced. The referee noted that although Hallert was deceased, Anne needed to make inquiries to his estate to obtain her client file.

The discovery referee also recommended that Anne be ordered to provide further responses to 23 special interrogatories related to her claims of fraud during the martial settlement negotiations, including information regarding any statements or communications made to her former attorneys about *Davis*, as well as the nature and timing of their knowledge about *Davis* and any research or inquiries they had conducted. The referee again struck the improper preliminary statements and general objections in Anne's responses, and found she had not met her burden to make a reasonable and good faith effort to obtain information from Hallert's estate, Doyle, and Wilkolaski.

5

At this point, the discovery referee granted Scott's request for monetary sanctions in the amount of $10,720 for his attorney fees incurred in addressing Anne's noncompliant discovery responses. The referee recommended denial of Scott's request for issue, evidence, and/or terminating sanctions without prejudice, but stated Scott could renew the motion if Anne failed to comply with the court's orders to provide further discovery responses. The trial court adopted the referee's report and recommendations. Anne paid the $10,720 monetary sanctions.

Anne thereafter served a fifth set of responses. For a special interrogatory requesting information on statements made to her former attorneys about *Davis*, the response included statements that "Inquiry to Mr. Doyle has not resulted in learning about any other statements beyond the 'dead in the water' statement" and that "[Anne] has also reached out to Mr. Wilkolaski but has not acquired any further information." The response further stated Anne "has made efforts to ascertain whether any probate was opened and has attempted to contact known relatives of Mr. Hallert, . . . . Nothing further has been discovered."

For a request for production of documents on the same topic, the response included that Anne had "recently checked the Contra Costa Superior Court, Register of Actions, under 'Probate,' . . . and no such probate was opened." It also stated she "attempted to contact Mr. Hallert's brother Marc Hallert, an attorney who worked at Hallert and Hallert, but did not work on [Anne's] dissolution matter, at the phone number and email address stated on the California State Bar website and the phone is no longer operable." The response further stated that her e-mail came back with a delivery failure.

For a special interrogatory requesting information on any research of matters being prosecuted by Scott's firm around the time of the parties' settlement negotiations, Anne responded that she was "electing, in part, to answer this special interrogatory by producing documents" that "identify all known efforts to research all known cases." After identifying certain documents, the response stated Anne "has no further information beyond this response."

On June 17, 2022, Scott's counsel sent a letter stating the responses were still deficient and unless compliant responses were received by July 1, he would be filing a motion for terminating sanctions. On July 1, Anne's counsel sent a letter indicating further responses would be provided. The letter also represented: "We will go through each and every response to each special interrogatory and/or each document demand category and, consistent with the above, we will make sure that we are providing clear responses and meet code requirements in terms of identifying documents, consistent with [the discovery referee's] recommendation and your meet and confer requests."

**E. Third Motion for Terminating Sanctions**

In July 2022, Scott filed a motion renewing his request for terminating sanctions. He argued that, despite five opportunities to respond, numerous meet and confers, two motions to compel, monetary sanctions, and a warning of more severe sanctions, Anne had continued to refuse to comply with the court's orders. With the discovery cut-off approximately two months away, Scott argued he was prejudiced by being deprived of the ability to obtain evidence and defend himself against Anne's 2020 RFO.

Two days after the motion was filed, Anne served a sixth set of responses. For the special interrogatory requesting information on statements made to her former attorneys about *Davis*, the response detailed

7

certain efforts to acquire further responsive information from Terence Doyle. The response then stated Anne "searched for an estate for Mr. Hallert. None was found. This may be because he had a trust." It continued: "Efforts were made to contact Mr. Hallert's heirs, but no further information was acquired." Wilkolaski was not mentioned.

For the special interrogatory requesting information on research regarding matters being prosecuted by Scott's firm, the response included information related to her former attorneys but also added that Anne had earlier asked Kevin Allen (an attorney who once worked with Anne at Scott's firm) if he "had the ability to search all state and federal courts." According to the record, Allen had provided Anne's counsel, back in February 2015, with a printout that contained "new information" about another of the firm's cases. When Anne served her sixth set of responses, she sent an additional document production that included Allen's 2015 updates on Scott's law firm cases and 2015 e-mail communications with her counsel. There was no explanation why such information and documents were not produced in earlier discovery responses.

Anne opposed the motion for terminating sanctions, arguing Scott did not "meaningfully engage in or comply with" the meet and confer process, and the adequacy of her fifth set of responses was no longer at issue because she had served her sixth set. Anne filed a declaration with the following representations: "Since the onset of this document production, I have tried to produce documents and interrogatory responses for many of the ambiguous requests of Scott Cole." She had produced additional documents per the referee's recommendation, and "me and my attorneys and experts" had sorted through documents.

Anne's counsel likewise filed a declaration, stating the fifth set of responses had been "augmented and/or supplanted" by the sixth set. According to counsel, the sixth set of responses "further clarify and delineate the efforts which were made to contact former attorneys for further information and/or documents and results."

The discovery referee issued a report recommending the motion for terminating sanctions be granted. The referee had reviewed Anne's sixth set of responses and found the responses were still deficient and noncompliant. The referee also found Anne had "not made a good faith attempt to comply with the Court's previous orders which provided her with specific rulings on objections . . . as well as delineating [Anne's] obligations in responding to the discovery."

The discovery referee characterized Anne's compliance problems as "plentiful." For example, the sixth set of responses "failed to include sufficient factual information from her lawyers and documents from attorneys' files" and did not show Anne had "made any real effort to obtain her file from the estate of Steven Hallert." Based on Anne's response that she searched for this estate and " 'None was found,' " it was "impossible to tell what efforts were undertaken, let alone whether these alleged steps were reasonable and diligent." Other responses in Anne's prior sets showed she knew how to give more specific and informative answers, such as detailing efforts to find Hallert's brother who had "apparently shared a law office." But in the current set of responses, Anne had offered vague, conclusory statements that failed to comply with her discovery obligations.

The discovery referee found it reasonable to believe that lesser sanctions, including issue or evidence sanctions, would not be effective in prompting Anne to provide code compliant discovery responses. Her

9

"problematic performance" was "perpetual through the discovery process." Anne had now been afforded six opportunities over two years to properly respond to the discovery requests, but consistently failed to do so. She promised code compliant responses only to "virtually immediately renege on such promises." Instead of responding to discovery in good faith, Anne "continues to skirt her obligations and continually provides incomplete and ambiguous—if not misleading—responses."

The discovery referee found Anne had "willfully and broadly" disobeyed the trial court's discovery orders. And though the court had first withheld sanctions, it had then imposed monetary sanctions and warned that Scott could pursue further sanctions (including terminating sanctions) if Anne continued to provide responses that were not code compliant. Anne nonetheless appeared "intent on continuing to flout her discovery obligations." Accordingly, despite three motions and numerous meet and confers, Scott had been denied his right to access and obtain evidence about Anne's 2020 RFO. Given the totality of these circumstances, the referee concluded terminating sanctions were warranted.

At the November 28, 2022 hearing before the trial court, Anne's counsel argued the responses were not only code compliant, but she "went beyond" her obligations because, given her waiver of attorney-client privilege, the information was "equally available" for Scott to get from Doyle and "to go out and depose [Hallert's widow], or get records from her directly because they weren't privileged."

On February 16, 2023, the trial court issued a statement of decision. Finding good cause to adopt the discovery referee's report and recommendation in its entirety, the court granted terminating sanctions of

10

Anne's 2020 RFO to set aside the marital settlement agreement and dissolution judgment.

### F. Motion to Set Aside Terminating Sanctions

Anne filed a motion to set aside the terminating sanctions pursuant to section 473, subdivision (b) ("section 473(b)"), arguing any discovery failures were attributable to her counsel. Anne's counsel filed an affidavit of fault stating the discovery responses "were drafted by me and verified by [Anne] based on my recommendation that the responses were sufficient," and any deficiencies "are due solely to my fault, not the fault of Kikianne G. Cole, and same were upon my mistake, inadvertence, surprise or neglect." The affidavit also attached another proposed set of discovery responses.

The trial court ruled Anne had not met her burden of proving entitlement to relief under section 473(b). Rejecting counsel's statements to the contrary, the court found that his actions were "deliberate and carefully orchestrated by them to engage in vigorous discovery battles" and that the record in the matter and counsel's four decades of experience did not support a finding of any mistake, inadvertence, surprise, or excusable neglect as required by the statute. In the words of the court, counsel's conduct showed a "miscalculation" of a failed strategy and "a series of ineffective tactics" warranting the ultimate sanction of dismissal. It also found Anne's actions (or inactions) to be a "direct or contributory cause" of the terminating sanctions, as the record "convincingly" demonstrated she was "personally and significantly involved in all aspects of the discovery, including the negligence and willful conduct that led this Court to issue terminating sanctions against her."

The trial court issued an order denying the motion to set aside the terminating sanctions. It then entered an order dismissing the 2020 RFO.

11

Anne first filed a notice of appeal purporting to appeal from the trial court's statement of decision issuing terminating sanctions and the order denying her section 473(b) motion.  She concedes this was premature.  (*Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 901; *Nickell v. Matlock* (2012) 206 Cal.App.4th 934, 940.)  She then filed a second notice of appeal from the dismissal order.  The appeals were consolidated.

## DISCUSSION

Anne presents two arguments on appeal.  First, she argues the trial court abused its discretion in issuing terminating sanctions.  Second, she argues the trial court erred in denying her motion to set the terminating sanctions aside under section 473(b).  We address, and reject, each argument in turn.

### A. Terminating Sanctions

The Civil Discovery Act authorizes a trial court to impose a range of penalties for conduct amounting to " 'misuse of the discovery process.' " (*Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 991 (*Doppes*), quoting § 2023.030.)  Misuse of the discovery process includes "[f]ailing to respond or to submit to an authorized method of discovery," "[m]aking an evasive response to discovery," and "[d]isobeying a court order to provide discovery." (§ 2023.010, subds. (d), (f)–(g).)  Available sanctions include monetary, issue, evidence, and terminating sanctions.  (§ 2023.030, subds. (a)–(d).)  The court may impose a terminating sanction by an order "dismissing the action, or any part of the action, of that party." (*Id.,* subd. (d)(3).)

" 'The power to impose discovery sanctions is a broad discretion subject to reversal only for arbitrary, capricious, or whimsical action.' " (*Parker v. Wolters Kluwer United States, Inc.* (2007) 149 Cal.App.4th 285, 297; *Kuhns v.*

12

*State of California* (1992) 8 Cal.App.4th 982, 988 [court's choice of sanction "subject to reversal only for manifest abuse exceeding the bounds of reason"].) "A decision to impose the ultimate sanction—a judgment in the opposing party's favor—should not be made lightly. 'But where a violation is willful, preceded by a history of abuse, and the evidence shows that less severe sanctions would not produce compliance with the discovery rules, the trial court is justified in imposing the ultimate sanction.' " (*Ibid.*)

In determining whether the trial court abused its discretion, we draw all reasonable inferences in support of its ruling. (*Karton v. Ari Design & Construction, Inc.* (2021) 61 Cal.App.5th 734, 749.) " 'It is appellant's burden to affirmatively demonstrate error and where the evidence is in conflict, we will affirm the trial court's findings.' " (*Padron v. Watchtower Bible & Tract Society of New York, Inc.* (2017) 16 Cal.App.5th 1246, 1260.) " 'We presume the trial court's order was correct and indulge all presumptions and intendments in its favor on matters as to which it is silent.' " (*Ibid.*) "The question on appeal 'is not whether the trial court should have imposed a lesser sanction; rather, the question is whether the trial court abused its discretion by imposing the sanction it chose.' " (*Ibid.*)

Anne's challenge to the trial court's imposition of terminating sanctions is multifaceted. First, she contends she complied with the court's prior orders and suggests its statement of decision for terminating sanctions contained "no specific facts" and cited "no specific conduct" justifying such sanctions. We disagree. The statement of decision adopted the discovery referee's report, which detailed Anne's history of noncompliance with the court's prior orders. Those orders specifically delineated her obligations to provide further responses, including that she make a reasonable and good faith effort to obtain information. As one specific example, the report observed the sixth set

13

of responses "failed to include sufficient factual information from her lawyers and documents from attorneys' files" and did not show Anne had "made any real effort to obtain her file from the estate of Steven Hallert." Based on Anne's conclusory interrogatory response that she searched for this estate and "None was found," it was, as the referee and the trial court ultimately determined, "impossible to tell what efforts were undertaken, let alone whether these alleged steps were reasonable and diligent." We see no abuse of discretion in the court's finding that Anne had "willfully and broadly" disobeyed the court's prior discovery orders.

Despite first contending the trial court provided no specifics, Anne then disputes the accuracy of the Hallert example cited by the court. She argues her sixth set of responses "supplemented" her fifth set, and she had provided sufficient information about the search for Hallert's estate (including information about Hallert's brother). For this, Anne specifically points to the preliminary statement in her fifth set and certain responses to requests for production in her sixth set. She also contends she was not required to "laboriously describe each and every step" of her search efforts.

To begin, we note this argument is not entirely consistent with her counsel's general declaration that the sixth set also "supplanted" parts of the fifth set. In any event, the trial court had previously found Anne's preliminary statements to Scott's special interrogatories were improper, and it required that she respond separately and completely to each interrogatory. (§ 2030.210, subd. (a).) Moreover, as the court indicated, a simple Google search had yielded an obituary and the names of Hallert's surviving wife and children, but Anne's response offered no information as to what specific efforts she made to inquire with Hallert's family after finding no court records of a probate estate for Hallert. And Anne's sixth set of responses

14

stated she had information and documents from her "entire file" because Hallert had given his file to Doyle, and Doyle had given that (plus his own file) to Anne. But when Doyle was deposed two months prior to the service of this sixth set, he testified: "All of Mr. Hallert's — I shouldn't say all of his file – the portions of the file that we received from Mr. Hallert included his pleadings and his work on financial matters, including [attorney]'s schedules that they had been working on for years." The court thus could reasonably and appropriately have concluded it was impossible to tell from these responses what actual efforts were undertaken, let alone whether such efforts were reasonable and diligent.

Second, Anne argues the terminating sanctions should be reversed because the trial court committed legal error in its previous discovery orders by requiring her to provide information and documents from her former counsel. She further argues that, after the trial court determined she had waived the attorney-client privilege, such discovery was not in her possession, custody, and control, and even if it were, it was equally available to Scott.

Notably, the record does not show that Anne raised the "possession, custody, and control" contention in her opposition to the motion for terminating sanctions or at the hearing. Arguments not raised in the proceedings below are forfeited. (*In re Marriage of Petropoulos* (2001) 91 Cal.App.4th 161, 179.)

Nor are we persuaded that Anne can escape the terminating sanctions by casting the prior discovery orders as legally erroneous here. The trial court issued its first order in January 2022 compelling Anne to provide compliant discovery responses. Over the next four months, Anne served two sets of discovery responses that did not comply with that order. Then, in

15

April 2022, the court issued its second order.  Anne served two more sets of responses that did not comply with either order.  As the court in *In re Marriage of Niklas* (1989) 211 Cal.App.3d 28 observed, the ability to later challenge a discovery order as legally erroneous via appeal from a final judgment does not mean a party is "justified in refusing to comply with the court's order or that the court could not impose sanctions to enforce its order." (*Id.* at p. 36, fn. 4.)  In other words, a party generally cannot refuse to comply with an allegedly erroneous order in the interim.[3]  (*Ibid.*)  Anne attempts to distinguish *Niklas* as a case involving monetary sanctions instead of terminating sanctions.  But the principles from *Niklas* speak to the discovery conduct here:  after the court issued discovery orders with detailed directions on what was still required, Anne provided at least four different sets of responses that remained noncompliant with one or both of those orders.  The court issued terminating sanctions upon finding Anne had "willfully and broadly" disobeyed its orders.  As explained above, there was no abuse of discretion in this finding.  Given all these circumstances, we reject Anne's attempt to justify this conduct by arguing the underlying orders were legally erroneous.

---

[3]     For the first time in her reply brief, Anne contends she is entitled to appeal all of the trial court's prior discovery orders, including both its orders on Scott's prior motions to compel.  Even assuming the prior orders were appealable, Anne's failure to present her contentions in her opening brief have forfeited their review.  (Cal. Rules of Court, rule 8.204(a)(1)(B) [each brief must state each point under separate heading or subheading]; *OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.* (2007) 157 Cal.App.4th 835, 844, fn. 3 (*OCM Principal Opportunities Fund, L.P.*) [contentions forfeited for failure to present argument and appropriate legal authorities]; *Doe v. California Dept. of Justice* (2009) 173 Cal.App.4th 1095, 1115 (*Doe v. California Dept. of Justice*) [appellant "forfeits an issue by failing to raise it in his or her opening brief"].)

16

Even if not forfeited or improper, the arguments fail to persuade. Information under a party's control includes non-privileged facts known to the party's attorney. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2025) ¶ 8:1055, citing *Smith v. Superior Court* (1961) 189 Cal.App.2d 6, 11–12.) Even after the termination of representation, an attorney still must surrender client materials and property upon the client request. (Rules Prof. Conduct, rule 1.16(e)(1); *Rose v. State Bar* (1989) 49 Cal.3d 646, 655.) And the personal representative of an estate has control of the estate and must use diligence when exercising such control. (Prob. Code, § 9600.) In view of these settled obligations, we see no abuse of discretion in ordering Anne to obtain information from her former counsel and make inquiries to Hallert's estate, or in rejecting Anne's argument that all responsive information and documents were "equally available" to Scott given those obligations did not extend to him. The cases cited by Anne are not on point. (E.g., *Holguin v. Superior Court* (1972) 22 Cal.App.3d 812, 821 [defendant doctors had no duty to start an investigation with persons in coroner's office]; *Bunnell v. Superior Court of Alameda County* (1967) 254 Cal.App.2d 720, 723–724 [list of witnesses from depositions and previous trials equally available to other party].)

Third, Anne argues her conduct "falls far short of the type of egregious behavior that may warrant terminating sanctions," and she attempts to contrast the situation here with that in *Lang v. Hochman* (2000) 77 Cal.App.4th 1225 (*Lang*). In *Lang*, the trial court was found to have properly imposed terminating sanctions where the defendants had represented they produced all documents as required by three discovery orders (*id.* at p. 1228), but later produced additional documents (*id.* at p. 1231). That, however, is what happened here, among other things. After the trial court's first two

17

discovery orders, Anne represented that her fifth set of responses was code compliant. But when Anne served her sixth set, she produced additional documents that belatedly included Allen's 2015 case updates and his 2015 e-mail communications with her counsel.

At bottom, Anne had two years and multiple opportunities to properly respond to Scott's discovery requests. She failed to comply, even after two court orders delineated her discovery obligations and punctuated the importance of such obligations with a monetary sanction. As the court observed, her sixth set of responses still failed to include sufficient factual information to determine whether she had made a reasonable and good faith effort to obtain documents and information. Given the totality of the circumstances, the trial court did not act arbitrarily or capriciously in issuing terminating sanctions based on Anne's demonstrated history of discovery abuse and willful violation of court orders. (§ 2023.010, subds. (d), (f)–(g).) (E.g., *Liberty Mutual Fire Ins. Co. v. LcL Administrators, Inc.* (2008) 163 Cal.App.4th 1093, 1102 (*Liberty Mutual*) [affirming terminating sanctions based on willfully evasive discovery responses]; *Doppes*, *supra*, 174 Cal.App.4th at pp. 991, 994 [abuse of discretion in not imposing terminating sanctions for continued failure to comply with document production orders]; *Los Defensores, Inc. v. Gomez* (2014) 223 Cal.App.4th 377, 391–392 [affirming terminating sanctions based on willful failure to identify and produce documents].)

Fourth, Anne contends the trial court did not consider lesser sanctions such as evidentiary or issue sanctions, which she claims would have been more appropriate because the discovery at issue was "largely irrelevant" to her 2020 RFO. This is a mischaracterization of the court's statement of decision, which explicitly detailed the referee's analysis in recommending

18

terminating sanctions instead of issue sanctions.  As the record reflects, the 2020 RFO sought to set aside the marital settlement agreement and dissolution judgment "on the basis of fraud."  Anne affirmatively declared this fraud included communications to her attorneys about the status of the *Davis* case.  Discovery requests about those purported communications, as well as any information her counsel independently knew or should have known about the *Davis* case, were thus plainly relevant.  Contrary to Anne's suggestion, the fact that her 2020 RFO also included an *alternative* request for an order finding Scott had breached his fiduciary duty does not negate this relevance.

We also question Anne's contention that the discovery was irrelevant to this alternative claim.  Family Code section 1101, subdivision (a) provides, in pertinent part, that "[a] spouse has a claim against the other spouse for any breach of the fiduciary duty that results in impairment to the claimant spouse's present undivided one-half interest in the community estate."  Discovery regarding what Anne or her attorneys knew about *Davis* goes to the question of whether Scott's purported failure to disclose the status of *Davis* did or did not result in any impairment.  (See *In re Schleich* (2017) 8 Cal.App.5th 267, 284–285 [discussing whether parties were "aware" of assets on breach of fiduciary duty claims].)  In any event, even if the discovery was not relevant to the entirety of Anne's requests in the 2020 RFO, California courts have discretion to dismiss a case in its entirety where appropriate and are not required to endure willful disobedience of their discovery orders if the discovery pertains to fewer than all the issues in the action.  (E.g., *Miranda v. 21st Century Ins. Co.* (2004) 117 Cal.App.4th 913, 928–929 [plaintiff's willful failure to sign medical records release

19

authorizations as ordered supported termination of arbitration of her entire uninsured motorist claim].)

Anne's reliance on *Lopez v. Watchtower Bible & Tract Society of New York, Inc.* (2016) 246 Cal.App.4th 566 is entirely misplaced, as the terminating sanctions in that case were the "*first and only* sanction imposed." (*Id.* at p. 605.) Here, the trial court's grant of terminating sanctions was based on its adoption of the referee's findings that Anne willfully and broadly disobeyed the court's prior orders and persisted in such conduct despite a previous award of monetary sanctions against her. Given the totality of the circumstances, the court did not abuse its discretion in finding that less severe sanctions would not prompt Anne's compliance.

Finally, Anne argues Scott was not prejudiced by her discovery responses. The parties disagree on whether such prejudice is required for the imposition of terminating sanctions. (Compare *Moofly Productions, LLC v. Favila* (2020) 46 Cal.App.5th 1, 11 (*Moofly*) [explaining terminating sanctions are appropriate only if party is prejudiced] with *Liberty Mutual*, *supra*, 163 Cal.App.4th at p. 1104 [questioning authority for prejudice requirement after Discovery Act overhauled statutes].)

Even assuming such a requirement, the *Moofly* court presented the relevant inquiry as whether a party's "failure to obey a court order" results in actual prejudice to the other party. (*Moofly*, *supra*, 46 Cal.App.5th at p. 11, citing *Morgan v. Ransom* (1979) 95 Cal.App.3d 664, 670 [no showing of prejudice from failure to answer interrogatory where "interrogatory, on its face, gives no indication that the information sought would be relevant to any issues raised by the pleadings"].) Here, it is undisputed that the outstanding discovery was relevant to Anne's fraud claim and, as explained above, also appears relevant to her alternative claim for breach of fiduciary duty. "A

20

party cannot intelligently defend itself against affirmative defenses or damage claims when the other side's discovery responses consist of legal double-talk and provide no useful information." (*Liberty Mutual*, *supra*, 163 Cal.App.4th at p. 1105.)  There is ample evidence to support the trial court's finding that Anne's obstructive conduct deprived Scott of his right to access and obtain evidence supporting (or perhaps undermining) her claims in the 2020 RFO.  After six sets of inadequate responses over the course of two years, numerous meet and confers, broken promises to comply with discovery obligations, court orders delineating those obligations, the imposition of monetary sanctions, and the close of discovery looming, Scott remained unable to obtain code compliant responses to his requests.

In sum, we conclude the record amply supports the trial court's findings that Anne's noncompliance was willful and preceded by a history of abuse, and that less severe sanctions would not induce her compliance.  (§ 2023.010, subds. (d), (f)–(g).)  No abuse of discretion appears.

**B. Denial of Section 473(b) Motion**

Section 473(b) provides "two distinct provisions for relief" from dismissal:  the first is discretionary and broad in scope, whereas the second makes relief mandatory but applies to a narrower range of adverse litigation results, including a judgment of dismissal.  (*Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 838 (*Evan Zohar Construction & Remodeling, Inc.*); *Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 616.)  Anne's motion to set aside the terminating sanctions explicitly requested "mandatory" and "not discretionary" relief under the statute, so we turn to this second provision.

Section 473(b)'s mandatory relief provision states, in relevant part, that the court shall vacate a dismissal "whenever an application for relief is made

21

no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect . . . unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect."

While "the general underlying purpose of section 473(b) is to promote the determination of actions on their merits," the additional and more specific purposes of the mandatory relief provision are to " 'relieve the innocent client of the burden of the attorney's fault, to impose the burden on the erring attorney, and to avoid precipitating more litigation in the form of malpractice suits.' " (*Even Zohar Construction & Remodeling, Inc.*, *supra*, 61 Cal.4th at p. 839.)

Appellate review of a trial court's ruling for mandatory statutory relief depends on the challenge at issue. To the extent application of the mandatory relief provision does not turn on disputed facts, it is subject to de novo review. (*McClain v. Kissler* (2019) 39 Cal.App.5th 399, 426.) But where facts are in dispute, the substantial evidence rule applies. (*Ibid.*)

Anne presents three arguments that raise questions of law. First, she contends the denial of her motion was "legally erroneous" because her counsel's affidavit of fault (along with a proposed set of discovery responses) satisfied "all the procedural requirements" to trigger mandatory relief under section 473(b). In so contending, she appears to suggest the trial court lacked *any* discretion to consider the accuracy or credibility of counsel's statements in his affidavit; in other words, as long as counsel submits an affidavit of fault, relief is mandatory. We cannot agree. Anne's position is contrary to the plain language of section 473(b), which explicitly provides a trial court need not grant the motion if it "finds that the default or dismissal was not in

22

fact caused by the attorney's mistake, inadvertence, surprise, or neglect." The trial court made that finding here.

Second, Anne argues the trial court improperly looked to "whether counsel had committed malpractice or acted incompetently." Not so. In stating there was nothing in the record to support a finding of counsel's excusable neglect or incompetence, the court was making clear its focus was on counsel's calculated strategy to engage in vigorous discovery battles in defiance of the court's express orders and specific instructions. Moreover, and contrary to Anne's further suggestion, the record reflects no basis for concluding the court denied relief because her counsel did not provide the reasons for any purported neglect. (Cf. *Martin Potts & Associates, Inc. v. Corsair, LLC* (2016) 244 Cal.App.4th 432, 435 [statement of reasons "will be helpful" and "may sometimes be relevant to prove the causal link" between attorney conduct and dismissal, but is not required].)

Third, Anne argues a client need not be "entirely blameless" to warrant mandatory relief under section 473(b). "There is a split of authority on whether the attorney must be the sole cause of the default in order to rely on the mandatory relief provision. Some cases say mandatory relief is available only if the party against whom the judgment is taken is " 'totally innocent of any wrongdoing and the attorney was the *sole* cause of the default or dismissal.' " (*Dollase v. Wanu Water, Inc.* (2023) 93 Cal.App.5th 1315, 1327, quoting *Lang, supra,* 77 Cal.App.4th at p. 1248.) Other courts, including Division Two of this district, have determined section 473(b) does not categorically preclude relief when client mistake is a contributing cause of a default or dismissal. (*Benedict v. Danner Press* (2001) 87 Cal.App.4th 923, 930 (*Benedict*).)

23

We need not wade into this debate because, as indicated, the trial court did not deny relief based on any client "mistake." Rather, the court determined that Anne had "willfully and broadly" disobeyed its prior discovery orders.[4] Indeed, *Benedict* explicitly distinguished its analysis from cases like this one, where a client's intentional conduct was responsible in part for the default or dismissal. (*Benedict*, *supra*, 87 Cal.App.4th at p. 930.)

Beyond these legal contentions, Anne presents two arguments urging that substantial evidence does not support the trial court's findings in denying her 473(b) motion.

Anne argues, for the first time in her reply brief, that the record shows her counsel was negligent but not "willfully disobedient." Apart from addressing cases cited in the respondent's brief, Anne fails to offer any supporting authority for the point. The argument is forfeited. (Cal. Rules of Court, rule 8.204(a)(1)(B); *OCM Principal Opportunities Fund, L.P.*, *supra*, 157 Cal.App.4th at p. 844, fn. 3; *Doe v. California Dept. of Justice*, *supra*, 173 Cal.App.4th at p. 1115.) Even if not forfeited, we conclude substantial evidence supports the trial court's findings as to willful conduct by Anne's counsel. The court explained counsel was "highly experienced" with over four decades in practice, but nonetheless permitted Anne to provide noncompliant discovery responses as part of a calculated strategy. Despite orders with detailed directions on what was still required, monetary sanctions, and a warning of terminating sanctions, counsel subsequently served a fifth set of

---

[4]     Anne's reply brief claims the trial court did not find she had engaged in "willful misconduct." That is wrong. As the record reflects, the court found Anne had "willfully and broadly disobeyed" its orders and was "personally and significantly involved in all aspects of the discovery, including the negligence and willful conduct that led this Court to issue terminating sanctions against her."

responses that was still deficient. Counsel then promised to provide further responses that were consistent with the court's prior orders, but served a new sixth set with similarly deficient responses.

Anne also challenges the trial court's additional findings that she was "personally and significantly involved" in the discovery, and that her actions were a "direct or contributory cause" of the terminating sanctions. She contends there was no evidence "other than speculation" that she participated in her attorney's mistake and that she simply "relied on her attorney" to prepare adequate discovery responses. As a preliminary matter, we disagree with Anne's characterization of the evidence. Anne's declaration opposing the motion for terminating sanctions detailed her involvement in the discovery responses. She declared: "Since the onset of this document production, I have tried to produce documents and interrogatory responses for many of the ambiguous requests of Scott Cole." The record reflects Anne personally attended the discovery conference with the referee in March 2022, whereafter he issued detailed directions on further responses and warned her of terminating sanctions for continued noncompliance. Her declaration further confirmed she was aware of the referee's "recommendations," which prompted her to personally participate in the production of additional discovery. This argument, moreover, is forfeited for failure to present supporting authority. (Cal. Rules of Court, rule 8.204(a)(1)(B); *OCM Principal Opportunities Fund, L.P.*, *supra*, 157 Cal.App.4th at p. 844, fn. 3.)

Even if not forfeited, Anne does not explain how her challenge to these additional findings would lead to a reversal of the trial court's ruling. A party may be eligible for mandatory relief under section 473(b) if her conduct was not a contributing cause of the terminating sanction, "*provided she satisfies the other statutory requirements.*" (*Rodriguez v. Brill* (2015) 234

25

Cal.App.4th 715, 719, italics added.)  Here, the trial court determined Anne had not met her burden under section 473(b) to show attorney mistake, inadvertence, surprise, or excusable neglect.  Indeed, it explicitly rejected her attorney's claim of mistake and instead found the discovery conduct was part of a "deliberate and carefully orchestrated" strategy to engage in "vigorous discovery battles."

In sum, the trial court did not err in denying Anne's section 473(b) motion, and its findings were supported by substantial evidence.

## DISPOSITION

The judgment is affirmed.  Costs of appeal are awarded to respondent Scott Cole.

_____

Fujisaki, J.

WE CONCUR:

_____

Tucher, P. J.

_____

Rodríguez, J.

*Cole v. Cole* (A168619/A172367)